976 A.2d 474

**TRIZECHAHN GATEWAY LLC, a Delaware Limited Liability Company, Appellant**

v.

**Paul H. TITUS, James H. McConomy, Lindsey D. Alton, Thomas D. Arbogast, S. Link Christian, David I. Cohen, Suzanne L. DeWalt, Donald T. Dulac, Jr., Martin J. Hagan, Thomas M. Hardiman, Henry R. Johnston, III, Stephen R. Kaufman, David B. Mulvihill, David G. Oberdick, Manning J. O'Connor II, Debra M. Parrish, Adrian N. Roe, Thomas J. Santone, Mark Stadler, C. Richter Taylor, Jr., Charles B. Watkins, Thomas C. Wettach, as Individuals, Trading and doing Business as Titus & McConomy, a Pennsylvania General Partnership, also known as Titus & McConomy, LLP, Appellees.**

Supreme Court of Pennsylvania.

Argued March 3, 2009.

Decided July 22, 2009.

638

Matthew Aaron Hamermesh, Esq., Mark Alan Aronchick, Esq., Hangley, Aronchick, Segal & Pudlin, P.C., Philadelphia, Albert J. Zangrilli, Jr., Esq., Yukevich Marchetti Liekar & Zangrilli, P.C., Pittsburgh, for Trizechahn Gateway LLC, a Delaware Limited Liability Company (51 WAP 2008, 52 WAP 2008, 53 WAP 2008).

Thomas C. Wettach, Esq., Cohen & Grigsby, P.C., Pittsburgh, Robert O. Lampl, Esq., for Thomas C. Wettach (51 WAP 2008, 52 WAP 2008 53 WAP 2008).

Thomas D. Arbogast, Esq., Schnader Harrison Segal & Lewis, L.L.P., Pittsburgh, for Thomas D. Arbogast (51 WAP 2008, 52 WAP 2008, 53 WAP 2008).

Suzanne L. DeWalt, Esq., Sherrard, German & Kelly, P.C., Pittsburgh, for Suzanne L. DeWalt, *Pro Se* (51 WAP 2008, 52 WAP 2008, 53 WAP 2008).

Erik Sobkiewicz, Esq., Douglas A. Campbell, Esq., Pittsburgh, for Titus & McConomy, et al. (51 WAP 2008, 52 WAP 2008, 53 WAP 2008).

Dianna Calaboyias Wyrick, Esq., Reed Smith, L.L.P., Pittsburgh, for Hardiman, Parrish and Kaufman (51 WAP 2008, 52 WAP 2008, 53 WAP 2008).

John R. O'Keefe, Esq., Metz Lewis, L.L.C., Pittsburgh, for Mulvihill, O'Connor and Stadler (51 WAP 2008, 52 WAP 2008, 53 WAP 2008).

Kenneth John Witzel, Esq., Watkins, Dulac & Roe, P.C., Pittsburgh, for Dulac, Johnston and Watkins (51 WAP 2008, 52 WAP 2008, 53 WAP 2008).

Daniel Boyle McLane, Esq., Eckert, Seamans, Cherin & Mellott, L.L.C., Pittsburgh; Bruce Philip Merenstein, Esq., Carl A. Solano, Esq., Schnader, Harrison, Segal & Lewis, L.L.P., Philadelphia, for Titus, Alton, Hagan and Mulvihill (51 WAP 2008, 52 WAP 2008, 53 WAP 2008).

BEFORE: CASTILLE, C.J., and SAYLOR, EAKIN, BAER, TODD, McCAFFERY and GREENSPAN, JJ.

## OPINION

Justice SAYLOR.

This appeal involves a commercial landlord/tenant dispute in which the tenant, a now-dissolved law firm, defaulted on rent payments and moved out of the building with several years remaining on the lease. The legal questions raised pertain to individual partner liability, lease interpretation, and the award of counsel fees.

## I. Background

In 1995, a third-party landlord and the law firm of Titus & McConomy LLP ("T & M"),[1] began negotiating a lease agree-

---

1. For ease of discussion, Appellant Trizechahn Gateway LLC, and Appellee T & M, will be referred to by name, while the individual

ment for occupation of the entire twentieth floor, part of the twenty-first floor, and basement storage space in Four Gateway Center, located in downtown Pittsburgh. Shortly after negotiations began, the third-party landlord sold Four Gateway Center to the present owner, Trizechahn Gateway LLP ("Trizechahn"). After further negotiations, T & M and Trizechahn reached an agreement and, subsequently, executed the ten-year master lease that is the principal subject of this litigation. Trizechahn's director of leasing testified that the master lease was originally drafted by the third party who sold Four Gateway Center to Trizechahn, that Trizechahn's lawyers reviewed the master lease before it was executed, and that certain terms of the original draft were changed after negotiations with T & M. The lease ran from October 1, 1995, through June 30, 2005. In June 1998, the parties entered into a second lease for an additional storage area in the basement of the building. The term of the storage lease ran from June 15, 1998, until June 30, 2005.

In August 1999, T & M decided to liquidate and wrap up its affairs. To this end, Appellee Paul Titus sent a letter to Trizechahn's general manager advising of the impending dissolution and offering to work toward subletting the master lease premises. A formal plan of liquidation was executed on that same date. Shortly thereafter, T & M vacated the master lease premises, but left behind office fixtures in the office space and files in the basement storage spaces. T & M continued to pay rent through January 2000, when all rental payments ceased. More than five years remained on the lease term at the time of default.

As it became clear that T & M would default on the lease, Trizechahn exercised its rights pursuant to Paragraph 15 of the master lease, which provided for an extensive array of landlord remedies, including the ability to enter the premises to remove the tenant's signs and other evidence of tenancy without terminating the lease or relieving the tenant of its

parties associated with T & M who are still involved in this litigation will be referred to collectively as the "Titus Appellees," or by name when appropriate.

obligations under the lease. *See* Master Lease at 9, ¶ 15(b), (d), RR. 136a. Pursuant to these provisions, Trizechahn sought to re-lease the space to subtenants in an effort to reduce its own risk and T & M's liability.

In February 2000, Trizechahn sent a letter to T & M outlining two termination plans into which it would be willing to enter to settle T & M's outstanding obligations under the master lease, both of which called for T & M to remit payments totaling less than $1 million. After T & M did not formally respond to this letter, Trizechahn sent a second letter notifying T & M that it had failed to remit rental payments for February and March of 2000. The letter stated Trizechahn would forego adding interest or penalty charges to the outstanding balance as a professional courtesy. In mid-July 2000, Trizechahn sent a third letter to T & M, notifying it that Trizechahn was attempting to relet the master lease storage space, and requesting T & M to remove any miscellaneous files left there after the firm's abandonment of the space. Four days later, T & M replied by agreeing to remove the files; however, T & M still did not remit any rent payments that were by this time overdue.

In late July 2000, having received no rental payments for March through July of 2000, Trizechahn commenced an action in the common pleas court, naming as defendants T & M as a Pennsylvania general partnership, as well as the partners in their individual capacities (collectively, the "Titus Appellees"), and seeking all sums still due under the lease. Trizechahn's complaint was amended several times to add additional parties and to advance a claim for re-letting and alteration expenses. Protracted litigation ensued in the trial court based on Trizechahn's amended complaint. After motions and argument, the court held a non-jury trial and issued a memorandum opinion setting forth its findings and conclusions. The issues centered on whether Trizechahn had a duty to mitigate damages; whether Trizechahn had terminated the lease by re-letting the space or had merely acted under the lease terms to obtain proceeds that could be deducted from the amount owed by T & M; and whether various partners of T & M were individual-

ly liable for any award in favor of Trizechahn. In the latter regard, the master lease contained a provision stating:

28. Special Stipulations

. . .

(i) In the absence of fraud, no person, firm or corporation, or the heirs, legal representatives, successors and assigns, respectively, thereof, executing this lease as agent, trustee or in any other representative capacity shall ever be deemed or held individually liable hereunder for any reason or cause whatsoever.

Master Lease at 12, ¶ 28(i), RR. 139a (hereinafter, "Subclause (i)").

The trial court awarded damages to Trizechahn for unpaid rent, expenses, interest, and counsel fees, ultimately entering judgment for approximately $3,274,000, a figure that included Trizechahn's renovation and re-letting costs, pre-judgment interest, and counsel fees. In reaching its verdict, the court reasoned that, once T & M breached the master lease, Trizechahn had no duty to mitigate and, additionally, had the option, under Paragraph 15(b) of the master lease, to re-let the premises without terminating the lease, and deduct the proceeds of such re-letting from the balance owed by T & M. On appeal to the Superior Court, T & M and the individual Titus Appellees asserted various grounds of error, including that the trial court had improperly held the partners who signed the master and storage leases individually liable notwithstanding Subclause (i), and that it should not have allowed Trizechahn to recover legal fees.

In a published decision, the Superior Court affirmed in part, reversed in part, vacated in part, and remanded. *See Trizechahn Gateway LLC v. Titus,* 930 A.2d 524 (Pa.Super.2007). After rejecting several of T & M's allegations of trial court error not presently relevant, the court turned to the issue of which partners, if any, were shielded from personal liability under Subclause (i). The court first stated that the clause facially could apply only to partners Thomas Arbogast and Thomas Wettach, as they were the ones who executed the two

leases on behalf of T & M. Although the court found the clause ambiguous on the question of whether it relieved these partners of liability in their individual capacities, it agreed with the trial court's decision not to entertain any parol evidence on the question, because the clause was drafted by the original property owner, and not Trizechahn, thus rendering any inquiry into Trizechahn's "intent" in drafting the clause meaningless. Further, the court indicated that any parol evidence from Trizechahn would have little credibility—because Trizechahn would simply assert that it did not intend to release Arbogast and Wettach from liability—and that, therefore, only Arbogast and Wettach could offer testimony worthy of belief. *See Id.* at 538–39. Ultimately, however, the Superior Court found that the trial court had erred in imposing individual liability upon Arbogast and Wettach. Its determination in this respect rested on its ultimate resolution of the ambiguity in Subclause (i). Specifically, it construed the provision as shielding Arbogast and Wettach from liability due to its "broad language" in providing that no person acting as a representative shall be held individually liable for "any reason or cause whatsoever."

The court next addressed the Titus Appellees' various challenges to the amount of the damage award. The only such challenge germane to the present proceedings relates to whether the common pleas court erred by including counsel fees in the award. In this respect, the Superior Court referenced Paragraph 15(g) of the master lease, which provides for an award of attorney's fees where "legal action is required to enforce performance by Tenant of any condition, obligation or requirement hereunder." The court deemed the word "hereunder" to be ambiguous, as it was not apparent whether that term referred to the master lease as a whole—in which case fee shifting was appropriate—or only to Paragraph 15(g)—in which case fees could only be awarded if Trizechahn forwarded payments on behalf of T & M "for operating costs and taxes for which [the Titus Appellees] were liable under the master lease terms." *Trizechahn Gateway*, 930 A.2d at 545 (quoting Paragraph 15(g) of the master lease). Construing

the phrase against Trizechahn, the court read the provision to mean the latter and, accordingly, held that counsel fees should not have been awarded to Trizechahn.[2]

Judge Orie Melvin concurred in the majority's decision to vacate the award of counsel fees and interest, and to remand for the limited purpose of recalculating the latter. She dissented, however, from the majority's decision to relieve partners Arbogast and Wettach of personal liability. Although she allowed that these two individuals were the only ones conceivably protected by Subclause (i), she indicated that the provision, read as a whole, indicated that they could not be held individually liable merely because they executed the contract, but that it does not "purport to excuse anyone who might be personally liable on the [master] lease for other reasons." *Id.* at 553 (Orie Melvin, J., dissenting) (quoting *Trizechahn Gateway LLC v. Titus,* Civil Div. GD 00–13044, Memorandum in Support of Order, *slip op.* at 22 (C.P. Allegheny March 30, 2005)). She continued:

> Here, the individual liability of Arbogast and Wettach arises not from the fact that they executed the master lease on behalf of the partnership but from their separate juridical existence as general partners. These Appellants, in other words, donned their "representative hat" but did not remove their "partner hat" when they executed the master lease on behalf of the partnership.

*Id.*

We granted Trizechahn's Petition for Allowance of Appeal, which challenged the Superior Court's decision to release Arbogast and Wettach from individual liability, as well as its determination that counsel fees should not have been awarded. *See Trizechahn Gateway LLC v. Titus,* 598 Pa. 541, 958 A.2d 496 (2008) (*per curiam*).

**2.** The Superior Court also agreed with the Titus Appellees' argument that the trial court erred in the calculation of prejudgment interest, resulting in an overcharge, and noted that the matter would have to be remanded for the interest component to be re-calculated. Trizechahn has not challenged this aspect of the court's disposition.

## II. Individual Partner Liability

■ Trizechahn first questions whether the Superior Court erred in releasing Appellees Arbogast and Wettach from individual liability based on Subclause (i). As a threshold matter, the law of this case, as it comes to this Court, is that, if there is any release from individual liability, such release may only apply to Arbogast and Wettach.[3] In the Superior Court, Arbogast argued that Paragraph 28(i) also released all of the remaining partners from individual liability. He based this claim on the theory that a promisee's decision to release a joint promisor constitutes a release of all other joint promisors. The Superior Court rejected this contention, *see Trizechahn Gateway*, 930 A.2d at 539, and we declined to review the issue, *see Trizechahn Gateway LLC v. Titus*, 598 Pa. 782, 959 A.2d 320 (2008) (*per curiam*).

With that background, Trizechahn argues that it would be error to interpret Subclause (i) as applying to Arbogast, because to do so would effectively destroy the legal concept of a partnership in this instance, as one partner would then be excused from partnership obligations by the happenstance that he signed the lease, while all partners enjoyed the substantial benefits from the leasehold during their years of occupancy. Trizechahn notes, in this regard, that such a clause, if applied as Arbogast suggests in the context of a partnership of two, would allow the partner who took responsibility for finding rental space and entering into a lease to make the other partner solely liable for damages resulting from a subsequent breach, which would "turn the idea of a partnership on its head." Brief for Appellant at 21. Trizechahn maintains, as well, that contract clauses that are exculpatory in nature, or tend to diminish the legal rights normally

3. In fact, arguably only Arbogast could be released as he is the only partner to have signed the master lease; Wettach signed the storage lease, which does not contain any release clause. Although that lease incorporates by reference all "conditions stated in" the master lease, it is questionable whether Subclause (i)'s reference to "this lease" could thereby signify the storage lease. Thus, although we need not finally determine this issue in view of our ultimate disposition, for simplicity we will use only Arbogast's name where appropriate in our discussion below.

accruing as the result of a legal relationship, are disfavored and must be strictly construed. *See Topp Copy Products v. Singletary*, 533 Pa. 468, 471, 626 A.2d 98, 99 (1993) (citing *Dilks v. Flohr Chevrolet*, 411 Pa. 425, 434, 192 A.2d 682, 687 (1963)). Here, Trizechahn submits that the only reasonable construction of Subclause (i) is that it was intended to be exculpatory as to agent-signers such as brokers or attorneys because, absent signing the lease, those individuals would have no possibility of incurring personal liability from a breach. In the alternative, Trizechahn argues that, if the Superior Court was correct in suggesting that the lease provision was ambiguous, it should have remanded for the admission of parol evidence to resolve the ambiguity rather than determining from an appellate posture that only Appellees' evidence would have been credible.

Appellees Arbogast and Wettach respond that under Section 8321(a) of Pennsylvania's Uniform Partnership Act,[4] 15 Pa.C.S. § 8321(a), every partner is an agent of the partnership for purposes of carrying on partnership business, and thus, the Superior Court correctly recognized that they signed the leases in a representative capacity.[5] Thus, in view of the content of Subclause (i), they contend that the Superior Court appropriately concluded, in effect, that the parties had modified the principles of partnership liability by agreeing to the release in question. Appellee Wettach, like the Superior Court majority, highlights the phrase in Paragraph 28(i), "for any reason whatsoever," and proffers that such broad terminology "necessarily includes the reason or cause of Arbogast's and Wettach's otherwise possible liability as a partner of the tenant." Brief for Appellee Wettach at 5.

Upon our review, we agree with Judge Orie Melvin that the most rational way to construe Subclause (i) is to limit its impact to the elimination of any liability arising solely by

4. Act of Dec. 21, 1988, P.L. 1444, No. 177, § 103 (as amended, 15 Pa.C.S. §§ 8301–8365).

5. Appellees Arbogast and Wettach each filed a separate brief from the other Titus Appellees, who do not offer any advocacy concerning this aspect of the Superior Court's decision.

virtue of the signing of the lease agreement in a representative capacity, since this is how such a clause would typically operate relative to a broad class of signers, such as corporate officers or attorneys, who would not otherwise bear individual liability for representative acts within the scope of their authority. It simply is counterintuitive to presume a landlord would relieve one of several partners from individual liability merely by the fortuitous circumstance that he was selected to represent the interests of the partnership (and, concomitantly, the other partners) in executing the lease. Arbogast's argument is colorable, however, since the precise wording of Subclause (i) is extremely broad and, facially at least, covers any "person" signing as an "agent," providing that he "shall [n]ever be deemed or held individually liable hereunder *for any reason or cause whatsoever.*" Master Lease at 12, ¶ 28(i), RR. 139a (emphasis added). Therefore, as Arbrogast forcefully maintains, since his status as a partner otherwise would be a "reason or cause" supporting liability, a literal interpretation of Subclause (i) would relieve him even from the liability he would bear by virtue of such status. *See* 15 Pa.C.S. § 8327(2) (mandating, without exception, that all partners are liable jointly for all "debts and obligations of the partnership").

Nevertheless, the scope of a general partner's agency to act on behalf of the partnership is ordinarily limited to matters undertaken in furtherance of the partnership's interest as a whole. *See* 15 Pa.C.S. § 8321(a) ("Every partner is an agent of the partnership for the purpose of its business and the act of every partner ... for apparently *carrying on in the usual way the business of the partnership* of which he is a member binds the partnership[.] (emphasis added)). *See generally* 59A AM.JUR.2D PARTNERSHIP § 207 ('Every partner ... is ... a general and authorized agent of the firm and of all the partners, for all purposes within the scope and objectives of the partnership.' "). To read the present no-liability provision as being intended to protect Arbogast only from personal liability, we would have to presume that the scope of the agency at the time of execution extended to securing to himself a personal benefit in the affairs of the partnership to

the potential detriment of the other partners.[6] This would allow Arbogast's signing of the master lease to effectively create two classes of partners—himself, and all the other general partners—with the rights of the second class being inferior to those of the first. This, in turn, would be in substantial tension with the fiduciary nature of the relationship between individual partners who act as agents of the partnership, and the partnership itself.

In view of the limited scope of the agency relationship underlying a partner's execution of a lease on behalf of the partnership, we hold that a general no-liability clause for agent-signers does not extend to relieve a signing partner of his individual liability arising from his status as a partner, in the absence of credible evidence that the effectuation of such an unusual non-recourse agreement was within the scope of the signing partner's agency in the first instance. We do not foreclose the possibility that the general partners might, in some circumstances, create an arrangement permitting one partner to secure an advantage relative to the others by allowing, upon entry into a contract by which the entire partnership is bound, absolution from personal liability for the executing partner only. The point here is that, to contract around the General Assembly's clear rules placing partners on equal footing in such an improbable manner, it is appropriate to require evidence that the other, potentially disadvantaged, partners consented to the arrangement.

Notably, in this case, no proffer to such effect has ever been advanced; indeed, Arbogast himself does not hold a view that

6. In this regard, it is observed again that Section 8327(2), 15 Pa.C.S., provides that all partners are liable for the debts and obligations of the partnership. That mandate is reinforced in other portions of the Uniform Partnership Act indicating that all partners have equal rights in the conduct and management of the partnership, *see* 15 Pa.C.S. § 8331(5), and that each partner "must contribute towards the losses, whether of capital or otherwise, sustained by the partnership, according to his share in the profits," *id.,* § 8331(1). Notably, Section 8327(2) contains only one exception to this general scheme, and that exception relates to a partner's decision to enter into a "separate obligation" to perform a partnership contract; this allows for a partner voluntarily to incur special obligations not shared by the others, rather than to place liabilities onto the others that he does not himself share.

his partners intended to permit him to enter into what would be, effectively, a personal side-agreement. Instead, according to Abrogast, Subclause (i) was always intended to relieve every partner from individual liability, effectively, to create a nonrecourse lease relative to all of the individual members of the T & M partnership. *See, e.g.,* Brief for Appellee Abrogast at 22–23. As previously noted, however, the law of this case is to the contrary. That being the case, we conclude that the basic controlling legal principles set forth in the Uniform Partnership Act must obtain, placing all partners on equal footing relative to the liability they otherwise would share under partnership law.

In summary, Section 8327(2) controls under the present circumstances, and Paragraph 28(i) of the master lease cannot properly be understood to immunize any of T & M's general partners from individual liability borne as a consequence of their legal relationship as partners. Accordingly, Appellees Arbogast and Wettach should not have been released from individual liability in this litigation.

### III. Counsel Fees

█ The second question we must confront is whether the Superior Court erred in reversing common pleas' award of attorneys' fees based on its reading of Paragraph 15(g) of the master lease. Paragraph 15, entitled "Landlord's Remedies," states, in relevant part:

(g) The tenant agrees that if it shall at any time fail to make any payment or perform any other act on its part to be made or performed *under this lease,* the Landlord may, but shall not be obligated to, and after reasonable notice or demand and without waiving, or releasing the Tenant from, any obligation under this lease, make such payment or perform such other act to the extent the Landlord may deem desirable, and in connection therewith to pay expenses and employ counsel. *The Tenant agrees to pay a reasonable attorney's fee if legal action is required to enforce performance by Tenant of any condition, obligation or requirement hereunder.* All sums so paid by the Landlord

and all expenses in connection therewith, together with interest thereon at the rate of 10% per annum from the date of payment, shall be deemed additional rent hereunder and payable at the time of any installment of Rent thereafter becoming due and the Landlord shall have the same rights and remedies for the non-payment thereof, or of any other additional rent, as in the case of default in the payment of Rent.

Master Lease at 10, ¶ 15(g), RR. 137a (emphasis added).

Trizechahn claims that the plain text of this provision is at odds with the Superior Court's determination that it only applies when Trizechahn "forwards payments on behalf of [T & M] for operating costs and taxes for which [T & M was] liable under the master lease terms." *Trizechahn Gateway,* 930 A.2d at 545. In particular, Trizechahn states that the Superior Court's suggestion that "hereunder" is ambiguous is belied by the reference to "under this lease" within the same paragraph. Trizechahn also points out that, logically, "hereunder" can only refer to the lease as a whole because there are no conditions, obligations, or requirements imposed on the tenant in Paragraph 15(g) itself. Trizechahn argues, from February 2000 to June 2005, T & M failed to fulfill any condition or obligation of the lease and that, accordingly, Trizechahn instituted legal action to enforce performance of the partnership's obligations, thereby entitling Trizechahn to counsel fees under Paragraph 15(g). In this regard, Trizechahn proffers that the Superior Court committed legal error by entertaining an unreasonable construction of the clause's language to find an ambiguity, whereas an ambiguity is only properly found where there are two different reasonable interpretations. Therefore, in Trizechahn's view, the Superior Court's decision is contrary to precedent allowing fee shifting upon clear agreement of the parties.

The Titus Appellees reply that Paragraph 15(g) is unclear, and thus, the Superior Court correctly found an ambiguity and resolved it in favor of a denial of counsel fees. They contend that, if anything, the paragraph indicates that it is only where Trizechahn incurs legal fees in making a payment or perform-

ing an act in place of T & M, that Trizechahn becomes entitled to indemnification for such fees, and there is no contention that Trizechahn did either of these things; rather, Trizechahn merely sought to obtain damages for Appellees' failure to pay rent.

■ Under the American Rule, applicable in Pennsylvania, a litigant cannot recover counsel fees from an adverse party unless there is express statutory authorization, a clear agreement of the parties, or some other established exception. *See Mosaica Charter Sch. v. Commonwealth, Dep't of Educ.*, 572 Pa. 191, 206–07, 813 A.2d 813, 822 (2002). The question here is whether there was a clear agreement of the parties to award fees to the lessor in the present situation. The Superior Court, as noted, found an ambiguity and resolved it as a matter of law in favor of Appellees. In doing so, the court reasoned that Trizechahn could not possibly offer probative parol evidence since it did not draft Paragraph 15(g); thus, the Superior Court concluded that it was required to resolve the ambiguity in favor of Appellees, as their intent was "clearly to not be held liable for attorneys' fees." *Trizechahn Gateway*, 930 A.2d at 524 & n. 14. This reasoning has several difficulties.

■ First, appellate courts cannot assume the content of evidence not in the record based solely on what that court would anticipate the evidence to be. Second, the Superior Court provided no support for the position that Trizechahn could not have had any intent relative to Paragraph 15(g) simply because it did not draft the provision. Clearly, any person entering into a contract—assuming he has read it (as Trizechahn's uncontested evidence showed)—has some idea of what he believes he is agreeing to. Therefore, the Superior Court's focus on the drafting process alone was misplaced, as Trizechahn could potentially have offered testimony concerning its understanding of the meaning of the provision that it adopted as its own and to which it agreed.

■ The most crucial question for present purposes, however, is whether Paragraph 15(g) is ambiguous in the first

place. "A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Insurance Adjustment Bureau v. Allstate*, 588 Pa. 470, 481, 905 A.2d 462, 468–69 (2006). The "reasonably" qualifier is important: there is no ambiguity if one of the two proffered meanings is unreasonable. *See Murphy v. Duquesne Univ. Of The Holy Ghost*, 565 Pa. 571, 591, 777 A.2d 418, 430 (2001) ("[C]ontractual terms are ambiguous if they are subject to *more than one reasonable interpretation* when applied to a particular set of facts." (emphasis added)). Furthermore, reviewing courts will not "distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity." *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 557 Pa. 595, 606, 735 A.2d 100, 106 (1999). Finally, while ambiguous writings are interpreted by the finder of fact, unambiguous ones are construed by the court as a matter of law. *See Kripp v. Kripp*, 578 Pa. 82, 91, 849 A.2d 1159, 1163 (2004).

Here, we differ with the Superior Court's conclusion that Paragraph 15(g) is ambiguous. As Trizechahn correctly points out, Paragraph 15(g) does not impose any separate condition, obligation, or requirement upon the tenant beyond the obligation to pay legal fees. Appellees' argument that the only legal fees in view are those incurred by Trizechahn when it makes a payment or performs an act in place of T & M is unconvincing because Trizechahn's contractual right to take such action does not constitute "enforce[ment of] performance by Tenant of any condition, obligation or requirement[.]" There is a qualitative difference between Trizechahn making payments or performing other actions in place of T & M, and Trizechahn "enforce[ing] performance by Tenant" through resort to the legal process. Therefore, Appellees' indication that the word "hereunder" associated with the latter occurrence only applies to the former is illogical. Additionally, the same word, "hereunder," is used later in Paragraph 15(g) when referring to the sums paid by the lessor becoming "additional rent hereunder." In this case, "hereunder" could not possibly mean "under Paragraph 15(g)," as rent is not

discussed anywhere else in Paragraph 15(g), but is provided for in Paragraph 1. *See* Master Lease at 1, ¶ 1, RR. 128a.[7] Thus, the only reasonable way to understand the clause's reference to Trizechahn's "enforce[ing] performance by Tenant of any condition, obligation or requirement hereunder" is that "hereunder" refers to the lease as a whole, and not merely to Paragraph 15(g). Accordingly, there is no ambiguity but rather, as determined by the common pleas court, a clear agreement by the parties to award counsel fees. As noted, this represents a valid exception to the American Rule.

## IV. Conclusion

For the reasons stated, we reverse the judgment of the Superior Court insofar as it construed the master lease to shield Appellees Arbogast and Wettach from personal liability. We also reverse its decision to vacate the common pleas court's award of counsel fees, and we reinstate that portion of the award. The matter is remanded to the Superior Court, which is directed to remand the case to the trial court for recalculation of the interest component of the award in accordance with the Superior Court's disposition of that issue.

Justice TODD and GREENSPAN did not participate in the consideration or decision of this case.

Chief Justice CASTILLE and Justice EAKIN, BAER and McCAFFERY join the opinion.

7. Trizechahn also points out that "hereunder" is used in other parts of the master lease where it is evident that the term refers to the entire lease. For example, under Paragraph 28(i), discussed above, persons signing in a representative capacity "shall [not] be deemed or held individually liable hereunder," meaning under the lease.