### Center Point Farm Homeowners' Association v. Gambone Bros. Development Co.

*Michael Yanoff,* for defendants.
*John A. Guernsey,* for plaintiffs.
*C. Dale McClain,* for plaintiffs.
*Paula J. McDermott,* for defendants.

CORSO, *J.,* December 30, 2009—Plaintiff, Center Point Farm Homeowners' Association, appeals from the order of October 22, 2009, which denied its motion for summary judgment, and granted the competing joint motion for summary judgment of defendants, Gambone Bros. Development Company and Superior Water Company Inc. As set forth more fully below, the order should be affirmed.

## I. FACTUAL BACKGROUND

On April 30, 1996, Gambone prepared and filed a declaration, the purpose of which was to restrict property that it was developing into a residential community of 173 townhomes in Worcester, Montgomery County, Pennsylvania. Article 4.1 of the declaration, entitled "Voting rights," relevantly defines Class A members of the homeowners' association as "all owners with the exception of the declarant . . . ." Class A members are entitled to one vote for each lot owned. Gambone, identified as the "declarant" is defined by Article 4.1 as the

sole holder of Class B membership. At all times relevant, the Class B member was entitled to three votes for each unsold lot to which it held title.

In its recitals, the declaration states that:

"Notwithstanding the foregoing, no provision in this declaration shall be construed as to prevent or limit declarant's rights to complete the development of the property and construction of improvements thereon. . . ."

Article 2.1(D) of the declaration grants easements of enjoyment to homeowners, subject to the following provision:

"The right of declarant, its successors and assigns, to have an easement over any portion of the property, including any lot, for the purpose of access, ingress and egress for the maintenance and repair of . . . water lines, other utilities and common service lines. . . . Declarant hereby reserves for the benefit of declarant and for the benefit of each and every private utility or municipal entity which may service the property, their agents and employees, an easement across, over, through and under the common area and each lot for the purposes of ingress and egress, installation, replacement, repair and maintenance of all utility and service lines and systems, including but not limited to water. . . ." Declaration, article 2.1(D).

Most relevant to this lawsuit, section 14.5 of the declaration states:

*"This declaration may be amended only by the affirmative vote or written consent of the owners holding not*

*less than 67 percent of the voting power of both classes of members;* provided, however, that the prior written approval of at least 67 percent of all first mortgagees must be obtained also, before article 12 may be amended. Notwithstanding the foregoing, until the closing upon the sale of the first lot in the property, declarant shall have the right to terminate or modify this declaration by recordation of a supplement hereto setting forth such termination or modification, in accordance with the applicable statutes of the Commonwealth of Pennsylvania. . . ." Declaration, section 14.5. (emphasis added)

Section 14.8 of the declaration states that:

"Declarant expressly reserves for itself, its successors and assigns, any public or private utility entity an easement for access, ingress and egress over any lot and over the common area for the purpose of connecting to the existing storm and sanitary sewer lines, water lines, other utilities and all other improvements upon the property and for the installation, replacement, repair and maintenance of such utility and service lines and systems as declarant or any public or private utility may require to service and benefit any property outside the bounds of the property encumbered hereby, the owners and users thereof." Declaration, section 14.8.

The declaration was amended for a first time on September 20, 1996.[1] The first townhouse in the community was sold, subject to the recorded subdivision plan and declaration, on October 29, 1996.

---

1. Because no lots had been sold at this time, plaintiff does not challenge the propriety of the first amendment.

The following month, Gambone and its subsidiary, Superior Water, executed a right-of-way and water facilities easement agreement to allow for the construction, installation, operation and maintenance of a water system for the townhouse community.[2] To further effectuate Superior Water's provision of water service, Gambone amended the declaration a second time on November 25, 1996, a third time on September 2, 1997 and a fourth time on May 12, 1998. At the time of the second amendment, Gambone owned 516 of 517 total votes, at the time of the third amendment, it owned 450 of 473 total votes, and at the time of the fourth amendment, it owned 372 of 421 total votes. (See plaintiff's motion for summary judgment, exhibit 14.) With 75 percent of the lots having been sold by January 7, 2000, control of the homeowners community was turned over to plaintiff at a meeting on February 12, 2000. (Id.)

## II. PROCEDURAL HISTORY

Displeased with rates being charged by Superior Water, plaintiff filed a complaint in declaratory judgment in December 2002, alleging, inter alia, that Gambone lacked the authority under the declaration to grant its subsidiary, Superior Water, the right to provide water service to Center Point Farm.[3] Plaintiff further claimed that an-

---

2. Superior Water, a certified public utility, has provided water service to the townhouse community pursuant to a Certificate of Public Convenience granted by the Pennsylvania Public Utilities Commission on or about October 18, 1996.

3. Nowhere in the complaint did plaintiff raise a challenge to any of the amendments or easements on the basis of an alleged violation of the Center Point Farm by-laws.

other water service provider, North Penn Water, is available to service the area at cheaper rates. The complaint demanded the following relief:

"(A) Declare the grant of the water easement to Superior Water Company Inc. by Gambone Bros. Development Co. illegal, improper and unlawful, and a violation of the original declaration and to further declare that the grant of the water easement is null, void and of no effect.

"(B) Declare that the second, third and fourth amendments to be illegal, improper and unlawful[ly] undertaken in violation of the original declaration and declare the second, third and fourth amendments [to] be null, void and of no effect.

"(C) Grant such other good and equitable relief as your honorable court may deem just and appropriate under the circumstances." (Complaint, "Wherefore" clause.)

After preliminary objections to the complaint were overruled, defendants filed answers with new matter, including, inter alia, the following affirmative defenses: (1) the amendments to the declaration were approved in conformity with the terms of the declaration; (2) the Pennsylvania Public Utilities Commission, and not this court, has exclusive jurisdiction over the issues raised by plaintiff; and (3) statute of limitations and laches defenses.

On April 2, 2009, plaintiff filed a motion for summary judgment. Defendants filed separate responses on May 18, 2009, and filed a joint motion for summary judgment on July 27, 2009.

In their joint motion for summary judgment, defendants argued that Gambone had the authority under section 14.5 of the declaration to enact the amendments, and that Superior Water has easement rights on the property to run water lines. They further argued that this court lacks subject matter jurisdiction because the PUC has the exclusive authority to regulate water service and rates, and that both North Penn Water and the individual homeowners are indispensable parties whom plaintiff has failed to join. Defendants also made a statute of limitations argument.

In its answer to defendants' motion, as well as in its own motion for summary judgment, plaintiff argued that the amendments were not passed in accordance with the procedures set forth in the declaration and by-laws,[4] that the PUC's authority is not implicated by plaintiff's attempt to invalidate the amendments to the declaration, that neither North Penn Water, nor the individual homeowners, are indispensable parties, and that its claims are timely.

After considering the record, and following oral argument, at which counsel stated their belief that no issues of triable fact remain, the court issued an order on October 22, 2009, granting defendants' joint motion for summary judgment, and denying plaintiff's cross-motion. The stated reason for the ruling was the court's determination that "the plain language of section 14.5 of the

---

4. As noted above, plaintiff did not allege in the complaint that the challenged easement and amendments were passed in violation of the by-laws; rather it appears to raise this argument for the first time in its motion for summary judgment. As such, any argument regarding alleged by-law violations are not properly before the court.

declaration unambiguously authorized Gambone Bros. Development Company to grant the challenged easements and to make the challenged amendments to the declaration." This timely appeal followed.

## III. ISSUES

In a concise statement of matters complained of on appeal, plaintiff raises seven issues, which are rephrased as follows:

(1) Whether the court erred in granting the joint motion for summary judgment, and denying plaintiff's motion for summary judgment, where, in unilaterally adopting the second, third and fourth amendments to Center Point Farm's original declaration and unilaterally granting the right-of-way and water easement agreement and water grant, Gambone violated plaintiff's due process rights as provided for in the declaration and the Association's by-laws, including, but not limited to, the due process requirements that notice be given, a meeting be held and a vote taken?

(2) Whether the court erred in granting the joint motion for summary judgment, and denying plaintiff's motion for summary judgment, where Gambone engaged in improper self-dealing by granting its family-owned water company exclusive water rights to the Center Point Farm residential community without the required consideration, consent and/or approval of the Association or its voting membership?

(3) Whether the court erred in granting the joint motion for summary judgment, and denying plaintiff's motion for summary judgment, where, Brian J. Hanson, a Gam-

bone employee who was appointed president of the Association by Gambone, acted in bad faith and in the best interests of his employer Gambone when he approved the second, third and fourth amendments to the declaration and granted the easement and water grant purportedly on behalf of the Association?

(4) Whether the court erred in granting the joint motion for summary judgment, and denying plaintiff's motion for summary judgment, where section 10.9.E. of the declaration clearly and unambiguously barred Gambone from unilaterally granting easements or rights-of-way to utility companies after the first lot was sold?

(5) Whether the court erred in granting the joint motion for summary judgment, and denying plaintiff's motion for summary judgment, where the declaration clearly and unambiguously required the affirmative vote or written consent of unit owners holding not less than 67 percent of the voting power of both the Class A voting membership and the Class B voting membership, and this required vote was not obtained with regard to the second, third and fourth amendments to Center Point Farm's original declaration or the easement and water grant?

(6) Whether the court erred in failing to construe the interpretation of section 14.5 of the declaration against Gambone as the drafter?

(7) Whether the court erred in granting summary judgment in favor of the defendants where the defendants asserted that other declarations for other developments purportedly contain language similar to section 14.5 of the declaration, even though there was no evidence of

this contention in the record and the only declaration before the court was the one drafted and executed by Gambone?

## IV. DISCUSSION

"Generally, a clear and unambiguous contract provision must be given its plain meaning. . . ." *J.F. v. D.B.,* 897 A.2d 1261, 1279 (Pa. Super. 2006) (quoting *Eichelman v. Nationwide Insurance Co.,* 551 Pa. 558, 563, 711 A.2d 1006, 1008 (1998)). The interpretation of an unambiguous contract is left for the court to decide as a matter of law. *Trizechahn Gateway LLC v. Titus,* 601 Pa. 637, 976 A.2d 474, 483 (2009) (citing *Kripp v. Kripp*), 578 Pa. 82, 91, 849 A.2d 1159, 1163 (2004)). An ambiguity exists where a contract is "reasonably susceptible" of different constructions. *Trizechahn Gateway,* 976 A.2d at 483. (citations omitted) No ambiguity exists if one of two proffered meanings is unreasonable. *Murphy v. Duquesne University of the Holy Ghost,* 777 A.2d 418, 430 (2001). A reviewing court will not "distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity." *Trizechahn Gateway,* 976 A.2d at 483 (quoting *Madison Construction Company v. Harleysville Mutual Insurance Company,* 557 Pa. 595, 606, 735 A.2d 100, 106 (1999)).

In the fifth, and most pertinent, issue raised on appeal, plaintiff contends this court erred by concluding that the declaration authorized Gambone to unilaterally pass the second, third and fourth amendments and related easements. Section 14.5 clearly and unambiguously authorized Gambone to take the actions it did because, at all

times relevant, it held "not less than 67 percent of the voting power of both classes of members." Plaintiff would have this court read the word "both" in section 14.5 as meaning "each," thus requiring the affirmative vote of at least 67 percent of Class A members and at least 67 percent of the Class B member. To read the provision this way, however, would permit the absurd scenario whereby a single Class A member could have halted the development of the entire residential community. Plaintiff's attempt to cast the declaration in this way requires an "unreasonable" reading of the document, one that is inconsistent with its plain language.

The finding that section 14.5 unambiguously authorized Gambone to take the actions it did, renders moot issues one, two and three of plaintiff's concise statement. Gambone, while holding an overwhelming majority of possible votes, had the discretion to pass the challenged amendments and easements. Moreover, any attempt by plaintiff to argue now that the passage of the challenged amendments and easements ran afoul of the by-laws fails, as noted above, in the absence of a claim in the complaint related to a by-law violation.

In its fourth issue on appeal, plaintiff asserts that section 10.9E of the declaration barred Gambone from unilaterally granting easements or rights-of-way after the first lot was sold. Section 10.9E provides, in relevant part, that:

"Declarant or its successors or assigns will undertake the work of constructing townhouses and developing all of the lots included with the property and any annexation thereto. The completion of that work and sale, rental and

other disposal of townhouses is essential to the establishment and welfare of said property as a residential community. As used in this section and its subparagraphs, the words 'its successors and assigns' specifically do not include purchasers of lots improved with completed townhouses. In order that said work may be completed and the property be completed and the property be established as a fully occupied residential community as rapidly as possible, no owner nor the association shall do anything to interfere with, and nothing in this declaration shall be understood or construed to:

"(E) Prevent declarant, at any time prior to acquisition of title to a lot by an owner, from granting additional licenses, reservations and rights-of-way to himself, to utility companies, or to others as may from time to time be reasonably necessary to the proper development and disposal of the property."

The above-quoted provision is intended to ensure that individual property owners do nothing to interfere with the proper completion of the residential development, plaintiff reads this provision as requiring Gambone, after the conveyance of a single lot to a single owner, to obtain the affirmative vote of that owner before granting an easement to, inter alia, a utility company. Once again, to read this provision as plaintiff does would give a single homeowner the power to frustrate the entire development. Consequently, plaintiff's reading of the provision is illogical, and at odds with the overriding purpose of the provision, which is to effectuate the speedy completion of the residential community.

In its sixth issue on appeal, plaintiff contends this court erred in failing to interpret section 14.5 against Gambone

as the drafter of the provision. This court finds no ambiguity exists in section 14.5. As such, the doctrine of contra proferentum does not apply.

With regard to plaintiff's final issue on appeal, this court did not base its decision upon any statement by Gambone that other declarations contain language similar to that found in section 14.5. As such, this claim of error lacks merit.

## IV. CONCLUSION

Based upon the foregoing, the order of October 22, 2009, should be affirmed.