**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1976
_____

AMY SILVIS, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY
SITUATED,
                                                        Appellant

v.

AMBIT ENERGY L.P., d/b/a AMBIT TEXAS, LLC;
AMBIT TEXAS, LLC; AMBIT NORTHEAST LLC, d/b/a AMBIT ENERGY;
AMBIT ENERGY; AMBIT ENERGY HOLDINGS, d/b/a AMBIT NORTHEAST, LLC;
AMBIT HOLDINGS LLC, d/b/a AMBIT ENERGY HOLDINGS, LLC;
AMBIT ENERGY HOLDINGS LLC, d/b/a AMBIT, d/b/a AMBIT ENERGY
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. No. 2-14-cv-05005)
District Judge: Honorable Eduardo C. Robreno
_____

Submitted Under Third Circuit LAR 34.1(a)
December 20, 2016
_____

Before: SMITH, Chief Judge, McKEE, and SHWARTZ, Circuit Judges.

(Filed: January 9, 2017)
_____

OPINION[*]
_____

SHWARTZ, Circuit Judge

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

Amy Silvis brought a putative class action against Ambit Northeast, LLC ("Ambit") alleging that Ambit's pricing of its variable-rate electricity plan breached their contract. Silvis appeals the District Court's order granting summary judgment in favor of Ambit, in which the Court found that the contract unambiguously granted Ambit discretion to set prices for its services. Because the contract is ambiguous as to the limitations on Ambit's pricing discretion, we will vacate the order granting summary judgment and remand.

I

Pennsylvanians can obtain electricity from public utility companies, like Penelec, or private energy companies, such as Ambit. Ambit advertised that the price of its variable rate plan favorably compared with Penelec's prices.

Silvis switched her electricity provider from Penelec to Ambit. Ambit's services were provided pursuant to a contract composed of two documents: the "Sales Agreements and Terms of Service" ("Terms of Service") and the "Residential Disclosure Statement" ("Disclosure Statement").[1] Two clauses are relevant to this appeal. First is the "Pricing and Payment" clause in the Terms of Service, which provides in relevant part:

> Unless otherwise agreed to in writing or other form as authorized by the Public Utility Commission of Pennsylvania your rate will be disclosed to you in your Disclosure Statement at the time of enrollment. Customers

---

[1] The Disclosure Statement is produced pursuant to 52 Pa. Code § 54.5. The purpose of the statement is to "provide the customer written disclosure of the terms of service." Id. § 54.5(b).

2

who choose a term product have a fixed rate for their entire term and may be charged a fee for early termination, if specified in the Disclosure Statement. If you select a variable rate plan, your initial rate will be shown at the time of your enrollment and thereafter rates are subject to change at the discretion of Ambit Energy.

App. 121. Second is the "Basic Service Prices" clause in the Disclosure Statement, which provides that: "[y]our rate for the Initial Term and subsequent Renewal Terms may vary dependent upon price fluctuations in the energy and capacity markets, plus all applicable taxes." App. 124. Silvis enrolled in a variable rate plan. Under that plan, the first month of service was provided at a fixed price. Thereafter, the price was subject to monthly changes determined by Ambit. The service would automatically renew each month, but either party could terminate the service with thirty days' notice.

Silvis avers that Ambit charged her more for electricity than she would have been charged had she remained with Penelec. After approximately twenty months of service, Silvis terminated her contract with Ambit.

Silvis filed a class action complaint alleging, among other things, that Ambit breached the contract "by charging rates that did not meet the contractual obligation to provide a competitive rate based on market factors." App. 79 ¶ 105 (amended complaint).[2] Following discovery, Ambit moved for summary judgment. The District Court granted Ambit's motion, holding that Silvis could not show that Ambit breached a contractual duty in setting its prices because the contract unambiguously afforded Ambit

---

[2] Before discovery commenced, the District Court dismissed the claims against all defendants except Ambit and all counts except for those alleging breach of contract and unjust enrichment as well as the count seeking declaratory relief for future services. The District Court ultimately granted summary judgment in favor of Ambit on Silvis's unjust enrichment claim. Silvis does not appeal these rulings.

discretion to set the prices and did not impose a duty to set competitive rates. The District Court also found that Silvis did not "proffer any legitimate evidence of bad faith" and so could not raise any genuine dispute of material fact regarding whether Ambit violated the covenant of good faith and fair dealing in setting its rates. App. 15. Silvis appeals.

## II[3]

To resolve this contract dispute, we begin with the tenets of Pennsylvania contract interpretation.[4] "When the terms of a contract are clear and unambiguous, its meaning must be determined from the four corners of the contract." In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig., 706 F.3d 217, 223 (3d Cir. 2013) (internal quotation marks and citation omitted); see also Atkinson v. LaFayette Coll., 460 F.3d 447, 452 (3d Cir. 2006) (stating that under Pennsylvania law, "[w]here the language is clear and unambiguous, the express terms of the contract will control"

---

[3] The District Court had jurisdiction under 28 U.S.C. § 1332(d)(2). We have jurisdiction pursuant to 28 U.S.C. § 1291. Our review of the District Court's grant of summary judgment is plenary. Mylan Inc. v. SmithKline Beecham Corp., 723 F.3d 413, 418 (3d Cir. 2013). We apply the same standard as the District Court, viewing facts and making all reasonable inferences in the non-movant's favor. Hugh v. Butler Cty. Family YMCA, 418 F.3d 265, 266-67 (3d Cir. 2005). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." Kaucher v. Cty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

[4] The parties agree that Pennsylvania law applies to the interpretation of the contract.

4

(citation omitted)).  If a contractual clause is ambiguous, then its meaning may be derived from extrinsic, "parol" evidence.  Kripp v. Kripp, 849 A.2d 1159, 1163 (Pa. 2004).  "[A] contract will be found ambiguous if, and only if, it is reasonably or fairly susceptible of different constructions and is capable of being understood in more senses than one and is obscure in meaning through indefiniteness of expression or has a double meaning."  Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc., 247 F.3d 79, 93 (3d Cir. 2001) (citation omitted).

Deciding whether a term is ambiguous is a question of law but deciding the meaning of an ambiguous contract clause is an issue of fact.  Trizechahn Gateway LLC v. Titus, 976 A.2d 474, 483 (Pa. 2009); Kripp, 849 A.2d at 1163.  Consequently, in reviewing a summary judgment motion, a court reviews the interpretation of an ambiguous contract clause in the light most favorable to the non-movant.  See Hugh v. Butler Cty. Family YMCA, 418 F.3d 265, 266-67 (3d Cir. 2005).

In this case, the parties dispute whether the pricing clause is ambiguous.  The contract contains two statements regarding the prices Ambit may charge its variable rate plan customers.  First, the Terms of Service pricing clause states that "[i]f you selected a variable rate plan, your initial rate will be shown at the time of your enrollment and thereafter rates are subject to change at the discretion of Ambit Energy."  App. 121.  Read alone, this provision unambiguously grants Ambit discretion to set the rates for variable rate plan customers.  However, the Terms of Service clause specifically refers to the Disclosure Statement, App. 121 ("[Y]our rate will be disclosed to you in your Disclosure Statement at the time of enrollment."), and the "Basic Service Prices" clause

5

in the Disclosure Statement provides that "[y]our rate for the Initial Term and subsequent Renewal Terms may vary dependent upon price fluctuations in the energy and capacity markets, plus all applicable taxes." App. 124. Silvis argues that this clause cabins Ambit's discretion and permits prices to vary based only on the "energy and capacity markets." Ambit, on the other hand, argues that the clause merely describes one non-exclusive basis upon which it may vary the rates.

Reading the two pricing clauses together, the contract is ambiguous as to the discretion afforded Ambit in setting rates for the variable rate plan. The Disclosure Statement clause includes the word "may," which affords Ambit some level of discretion. See, e.g., Commonwealth v. Baraniak, 504 A.2d 931, 933 (Pa. Super. Ct. 1986) (stating that under the Pennsylvania rules of construction, "may" must always be given a permissive interpretation); Weiner v. Hosp. Serv. Plan of Lehigh Valley, 144 A.2d 575, 577 (Pa. Super. Ct. 1958) (same). The placement of the word "may" in the clause, however, renders the scope of that discretion ambiguous. The word "may" either begins a qualifying phrase stating that the rates "may vary" or a longer phrase stating that the rates "may vary dependent upon price fluctuations in the energy and capacity markets." If "may" is attached only to the word "vary," then Ambit would only have discretion to decide whether to modify its rates; the remainder of the clause would then act to limit that discretion, requiring that any variation be "dependent upon price fluctuations in the energy and capacity markets."[5] If, however, the word "may" is attached to the entire

---

[5] This interpretation, which requires the contract to disclose all factors that will cause Ambit to change its rates, is also consistent with Pennsylvania's regulation. The

phrase "vary dependent upon . . . ," then Ambit's authority to change the rates could be based upon "price fluctuations in the energy and capacity markets" or, by implication, on any other factor. Consequently, the "may" clause either affords Ambit the authority to vary the rates or describes the circumstances under which it can vary the rates.

Because of the ambiguity in the Disclosure Statement clause, one reasonable interpretation of the Terms of Service and Disclosure Statement clauses read together is that the Disclosure Statement clause "operates as a limitation on the broader language" in the Terms of Service clause, triggering the "well-settled maxim that specific . . . provisions prevail over more general provisions." In re Phila. Newspapers, LLC, 599 F.3d 298, 306 (3d Cir. 2010); see also J.C. Penney Life Ins. Co. v. Pilosi, 393 F.3d 356, 365-66 (3d Cir. 2004) (applying the rules of statutory interpretation to contract interpretation under Pennsylvania law). As a result, the Terms of Service clause that gives Ambit the authority to change the rates would be limited by the Disclosure Statement clause that sets forth the specific circumstances under which the rates can change. Thus, read in a light most favorable to the non-movant Silvis, the Disclosure Statement clause can be "reasonably or fairly" understood to limit Ambit's discretion embodied in the Terms of Service clause and thereby create ambiguity concerning the scope of its authority to change its prices. See Bohler-Uddeholm Am., Inc., 247 F.3d at 93.

---

regulation requires that disclosure statements to variable rate plan customers "include . . . [c]onditions of variability (state on what basis prices will vary)." 52 Pa. Code 54.5(c)(2)(i), (ii) (2007) (amended 2014). We are not using the regulation as extrinsic evidence to interpret the contract but rather note this simply to show that the interpretation is reasonable.

We will therefore remand to the District Court to determine whether, viewing the ambiguous clause in the light most favorable to the non-movant Silvis, the record contains a genuine issue of material fact as to whether Ambit breached the contract under the interpretation favoring Silvis, and thus whether the ambiguity can "affect the outcome of the suit under governing law."[6] Kaucher v. Cty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).[7]

---

[6] Thus, summary judgment may still be granted in Ambit's favor if there is no showing of a breach of the contract under either reasonable interpretation of the ambiguous clause.

[7] The District Court correctly granted summary judgment for Ambit on Silvis's claim that Ambit breached the covenant of good faith and fair dealing in performing the contract. "Under Pennsylvania law, the implied covenant of good faith does not allow for a cause of action separate and distinct from a breach of contract claim." Burton v. Teleflex Inc., 707 F.3d 417, 431 (3d Cir. 2013). Consequently, the covenant of good faith does not apply to all of a party's dealings with a contractual partner but only to the partner's performance of duties that specifically arise out of their contract. Id.; Northview Motors, Inc. v. Chrysler Motors Corp., 227 F.3d 78, 91–92 (3d Cir. 2000).

Silvis raises three allegations of purported bad faith by Ambit but none provide a basis for relief. First, Silvis alleges that, in violation of Pennsylvania law, Ambit concealed the bases upon which it set its rates. Silvis did not raise this argument to the District Court and so it is waived. United States v. Joseph, 730 F.3d 336, 341 (3d Cir. 2013) (holding that "arguments rather than issues are what parties preserve or waive"). Even if it were preserved for our review, this claim does not allege an act of bad faith in performance of a duty arising out of the contract but alleges bad faith as a result of an alleged violation of a duty imposed by a Pennsylvania regulation. Since this duty does not arise out of contract, this claim is not cognizable under Pennsylvania's covenant of good faith and fair dealing. Second, Silvis avers that Ambit misled its customers by advising them not to terminate their contracts with Ambit on the basis of false promises that Ambit's rates would soon be cheaper than its competitors'. This does not provide a basis for relief because Silvis here does not allege bad faith in relation to a contractual duty but instead appears to recast a fraud claim (which she omitted from the amended complaint) in terms of the covenant of good faith and fair dealing. See Northview Motors, Inc., 227 F.3d at 92 ("[I]f a plaintiff alleging a violation of the implied covenant of good faith also were to file a claim for fraud based on the same set of facts, Pennsylvania courts likely would decline to proceed with the claim alleging bad faith."). Third, Silvis avers that Ambit breached the covenant of good faith because it based its

# III

For the foregoing reasons, we will vacate the order granting summary judgment

and remand to the District Court for further proceedings.

---

rates on factors not permitted by the contract. This allegation is identical to Ambit's
claim for breach of contract and offers no allegation of bad faith beyond the potential
breach; to show bad faith the claimant must show some intentional mischief in breaching
a contractual duty. See, e.g., Benchmark Grp., Inc. v. Penn Tank Lines, Inc., 612 F.
Supp. 2d 562, 583–84 (E.D. Pa. 2009) ("Examples of bad faith can include evasion of the
spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect
performance, abuse of a power to specify terms, and interference with or failure to
cooperate in the other party's performance." (internal quotation marks and citation
omitted)). The record does not show such mischief and, consequently, Silvis presented
no basis on which a jury could find that Ambit violated the covenant of good faith and
fair dealing in performance of the contract, and the District Court therefore properly
dismissed this basis for relief.