J-A27037-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| KESHAV CONVENIENCE STORE, LLC D/B/A PENN CORNERS FOOD MART AND D/B/A PENN CORNERS KESHAV CONVENIENCE STORE | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : | |
| v. | : : | No. 573 MDA 2022 |
| G & G OIL, INC. | : : : | |

Appeal from the Order Entered February 23, 2022
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
2020-08558

BEFORE:   DUBOW, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                **FILED: JANUARY 10, 2023**

Appellant, Keshav Convenience Store, LLC d/b/a Penn Corners Food Mart and d/b/a Penn Corners Keshav Convenience Store (Plaintiff), appeals from an order of the Court of Common Pleas of Luzerne County (trial court) granting summary judgment in favor of G & G Oil, Inc. (Defendant), in an action arising out of a written fuel supply contract.  For the reasons set forth below, we affirm.

Plaintiff owns and operates a gas station and convenience store at 1603 San Souci Parkway in Hanover Township, Pennsylvania.   Plaintiff purchased the gas station and convenience store in June 2017, at which time the gas

_____

[*] Retired Senior Judge assigned to the Superior Court.

station was a Gulf station. Patel Dep. 10-11, 14. After the contract under which the station operated as a Gulf station expired in late 2017 or early 2018, Plaintiff operated as an unbranded station. *Id.* 11-12. While operating as an unbranded station, Plaintiff sought to become branded because some of the gas station's equipment was getting old and Plaintiff wanted to upgrade and obtain new gas pumps. *Id.* 12-13, 19. Plaintiff negotiated with and obtained offers from Defendant and one other fuel supplier and decided to enter into a contract with Defendant to brand as a Sunoco station because, although both suppliers would pay for new pumps, Defendant also offered to provide a point-of-sale register system and the other supplier did not. *Id.* 14-17, 19, 22-24. There were no other significant differences in the contract terms offered by the two suppliers. *Id.* 22-24.

On April 2, 2019, Plaintiff and Defendant entered into a written contract under which Defendant agreed to supply Sunoco gasoline and other Sunoco fuel products to Plaintiff and Plaintiff agreed to buy Sunoco gasoline and fuel products only from Defendant and to sell only Sunoco gasoline and fuel products at its gas station (the Contract). Complaint ¶5; Answer ¶5; Contract § 1(A), (B). The Contract requires that Defendant pay for two new gas pumps, a point-of-sale register system, and up to $75,000 in branding and imaging for Plaintiff's gas station. Contract § 1(E). The Contract provides that it is to be in effect for a term of 10 years, that Plaintiff is required to purchase a minimum of 5.4 million gallons of Sunoco gasoline and fuel products from

Defendant, and that if the minimum purchase requirement is not met within 10 years, the Contract will remain in effect beyond 10 years until the minimum purchase requirement is satisfied. Contract § 2. The Contract also provides that if it is terminated before the expiration of the 10-year term or before Plaintiff satisfies the 5.4 million gallon minimum purchase requirement, Defendant is entitled to liquidated damages at the rate of $0.05 per gallon for the shortfall and that Defendant is entitled to reimbursement of the unamortized portion of its payments for new gas pumps, a point-of-sale register system, and branding and imaging if the Contract is terminated before the expiration of the 10-year term. Contract § 8(A), (B).

The Contract does not contain any provision granting Plaintiff an exclusive geographical territory in which no other Sunoco stations may operate or any provision restricting Defendant's ability to brand other Sunoco stations or supply Sunoco products to other gas stations. Contract; Patel Dep. 40-41. The Contract sets forth the following as events of default by Defendant:

A. **Failure of G & G to comply with any term or condition of this Agreement**;

B. **Failure of G & G to make a good faith and reasonable effort to carry out the provisions of this Agreement**;

C. The occurrence of one or more of the following events:

(1) Bankruptcy or other act of insolvency by G & G;

(2) Failure of G & G to timely pay all sums to Customer to which Customer is legally entitled;

- 3 -

(3) Intentional alteration, mislabeling or misbranding of Fuel or other trademark violations by G & G; or

(4) **Failure by G & G to comply with any federal, state, or local law or regulation affecting the operation of the Premises**.

D. Customer is not allowed to use any other credit card processing other than the one run through Sunoco, its assigns or G & G Oil.

Contract § 9 (emphasis added).

On December 5, 2019, eight months after Plaintiff and Defendant entered into the Contract, Defendant entered into an agreement to supply Sunoco gasoline and fuel products to an EZ Express gas station (Competitor) at 1204 Sans Souci Parkway, Hanover Township, Pennsylvania, approximately a mile from Plaintiff's gas station, and brand it as a Sunoco station. Gilchrist Dep. 58, 78-79; EZ Express Contract. This EZ Express contract has a higher minimum gallon requirement, 7.2 million gallons over a 10-year period, and has different price provisions, charging a higher per gallon price to Competitor but providing rebates to Competitor if Competitor's purchases exceed the minimum gallon rate. Gilchrist Dep. 53-55, 79-80; EZ Express Contract §§ 1(F), 2, 3. On March 25, 2020, Plaintiff's attorney sent a letter to Defendant asserting that the branding of Competitor as a Sunoco station and the supplying of Sunoco fuel to Competitor was a breach of the Contract's requirement that Defendant "make a good faith and reasonable effort to carry out" the Contract's provisions and requesting that Defendant cure this alleged default by ceasing supplying Sunoco fuel to Competitor and ceasing branding

it as a Sunoco station.  3/25/20 Cassel Letter.  Defendant's counsel responded that Defendant's branding and supplying of Competitor was not a breach of the Contract.  4/16/20 Falcone Letter.

The rate at which Plaintiff would have to purchase fuel from Defendant to satisfy the 5.4 million gallon requirement in a 10-year period is 45,000 gallons per month.  Patel Dep. 24-25.  Plaintiff's purchases of fuel from Defendant were consistently below 45,000 gallons per month both before and after Competitor began operating as a Sunoco station and did not decrease after Competitor began operating as a Sunoco station.  Exhibit B to Defendant's Brief in Support of Summary Judgment.[1]

---

[1] Plaintiff's monthly fuel purchases from Defendants from May 2019 through March 2021 were:

| | |
|---|---|
| May 2019 | 32,202 gallons |
| June 2019 | 22,504 gallons |
| July 2019 | 32,002 gallons |
| August 2019 | 38,000 gallons |
| September 2019 | 22,298 gallons |
| October 2019 | 31,004 gallons |
| November 2019 | 32,502 gallons |
| December 2019 | 28,697 gallons |
| January 2020 | 41,297 gallons |
| February 2020 | 25,001 gallons |
| March 2020 | 32,704 gallons |
| April 2020 | 15,898 gallons |
| May 2020 | 23,799 gallons |
| June 2020 | 32,301 gallons |
| July 2020 | 37,704 gallons |
| August 2020 | 32,803 gallons |
| September 2020 | 38,205 gallons |
| October 2020 | 37,001 gallons |

*(Footnote Continued Next Page)*

On September 16, 2020, Plaintiff filed a complaint against Defendant alleging that Defendant's branding and supplying of Competitor interfered with Plaintiff's ability to meet the Contract's minimum gallon requirement and asserting five causes of action, including claims for breach of contract and breach of the duty of good faith under Pennsylvania's Uniform Commercial Code (UCC). Defendant in its answer disputed that branding and supplying Competitor caused Plaintiff to fail to satisfy the minimum purchase requirement, denied that it breached the contract or its duty under the UCC, and asserted counterclaims for misrepresentation. Following discovery, Plaintiff moved for summary judgment on Defendant's counterclaims and Defendant moved for summary judgment on all of Plaintiff's claims against it. On November 10, 2021, Defendant's counterclaims were discontinued with prejudice pursuant to a stipulation of the parties. On February 23, 2022, the trial court granted summary judgment in favor of Defendant and against Plaintiff on all of Plaintiff's five causes of action. This timely appeal followed.

In this appeal, Plaintiff raises the following single issue for our review:

Did the trial court err when it granted [Defendant's] Motion for Summary Judgment on [Plaintiff's] claims that [Defendant] violated the Agreement's express provision and statutory duties

---

| November 2020 | 32,102 gallons |
| December 2020 | 40,098 gallons |
| January 2021 | 32,895 gallons |
| February 2021 | 24,907 gallons |
| March 2021 | 42,497 gallons |

Exhibit B to Defendant's Brief in Support of Summary Judgment.

to deal in good faith with respect to the parties' fuel supply agreement?

Appellant's Brief at 5. Our standard of review of the trial court's grant of summary judgment is *de novo* and our scope of review is plenary. ***Pyeritz v. Commonwealth***, 32 A.3d 687, 692 (Pa. 2011); ***American Southern Insurance Co. v. Halbert***, 203 A.3d 223, 226 (Pa. Super. 2019). Summary judgment is properly granted in favor of the defendant where the plaintiff has no cause of action as a matter of law under the undisputed facts. Pa.R.C.P. 1035.2(1) (summary judgment may be granted "whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense" and movant is entitled to judgment as a matter of law); ***Keystone Specialty Services Co. v. Ebaugh***, 267 A.3d 1250, 1255 (Pa. Super. 2021). In particular, summary judgment is appropriate and must be affirmed where the plaintiff's claims against the defendant are precluded by the terms of a written agreement. ***Keystone Specialty Services Co.***, 267 A.3d at 1255.

Here, it was undisputed that Defendant satisfied its obligations under the Contract to provide new pumps, a point-of-sale register system, and branding and imaging and there was no claim that Defendant failed to supply fuel or breached any term of the Contract that required Defendant to perform a specific act or prohibited Defendant from performing a specific act. Patel Dep. 29-30, 40-41. Plaintiff's only claims in this appeal are that Defendant's branding and supplying Competitor can be found to constitute a breach of the

- 7 -

Contract's requirement that Defendant "make a good faith and reasonable effort to carry out the provisions of" the Contract, Contract § 9, or a breach of a statutory duty of good faith under Section 2306 of the UCC, 13 Pa.C.S. § 2306.[2]

The trial court correctly held that both of these claims fail as a matter of law. Whether the Contract's good faith requirement and Section 2306 of the UCC prohibit Defendant from branding or supplying another Sunoco station are issues of law, not issues of fact. The interpretation of a written contract is an issue of law. *Snyder v. Crusader Servicing Corp.*, 231 A.3d 20, 28 (Pa. Super. 2020); *Mitch v. XTO Energy, Inc.*, 212 A.3d 1135, 1138 (Pa. Super. 2019). Interpretation of a statute is likewise a question of law. *Goodwin v. Goodwin*, 280 A.3d 937, 943 (Pa. 2022); *G.A.P. v. J.M.W.*, 194 A.3d 614, 616 (Pa. Super. 2018). The cases addressing what constitutes good faith are not to the contrary. Rather, in *Pavex, Inc. v. York Federal*

---

[2] Plaintiff has also asserted that it told Defendant before the Contract was signed that it was seeking to brand as a Sunoco station because a nearby Sunoco station had debranded and that Defendant assured Plaintiff that it could expect to increase its gasoline sales as a branded Sunoco station. *See* Patel Dep. 21-22, 25-26. In its Complaint, however, Plaintiff did not plead any claim for fraud or misrepresentation or any claim that any terms of its agreement with Defendant were fraudulently or mistakenly omitted from the Contract. Complaint ¶¶ 5-36. Plaintiff does not argue in its briefs in this appeal that the trial court erred in not granting it leave to amend to plead such claims. To the contrary, Plaintiff states in its reply brief that it "is not seeking to amend the [Contract], but, rather, is seeking to enforce its express terms." Appellant's Reply Brief at 3. Therefore, no claim based on these alleged pre-Contract representations or understandings is before us.

*Savings & Loan Association*, 716 A.2d 640 (Pa. Super. 1998) and *Coy v. Ford Motor Credit Co.*, 618 A.2d 1024 (Pa. Super. 1993), this Court determined what type of conduct constituted good faith under the UCC as an issue of law. *Pavex, Inc.*, 716 A.2d at 644-46; *Coy*, 618 A.2d at 1026-28.

Where the language of a written contract is unambiguous, the meaning of the contract is ascertained from the writing alone. *Murphy v. Duquesne University of the Holy Ghost*, 777 A.2d 418, 429 (Pa. 2001); *Mitch*, 212 A.3d at 1138-39; *Neducsin v. Caplan*, 121 A.3d 498, 507 (Pa. Super. 2015). Conduct that breaches an obligation to act in good faith has been held to include evasion of the spirit of the bargain, lack of diligence, slacking off, willful rendering of an imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance. *Stamerro v. Stamerro*, 889 A.2d 1251, 1259 (Pa. Super. 2005); *Kaplan v. Cablevision of Pennsylvania, Inc*., 671 A.2d 716, 722 (Pa. Super. 1996); *Somers v. Somers*, 613 A.2d 1211, 1213 (Pa. Super. 1992). Neither the duty of good faith nor the doctrine of necessary implication,[3] however, permits a court to add a substantive term to a written contract, unless it is clear from the language of the contract that the parties intended to be bound by that

_____

[3] It appears that Plaintiff's claim here might more properly be characterized as a claim based on the doctrine of necessary implication, which allows a court to imply a contract term where it is clear that the obligation was within the contemplation of the parties at the time of the contracting or is necessary to carry out their intentions. *Kaplan*, 671 A.2d at 720.

- 9 -

term. *John B. Conomos, Inc. v. Sun Co.*, 831 A.2d 696, 706-07 (Pa. Super. 2003); *Kaplan*, 671 A.2d at 720-22; *see also Glassmere Fuel Service, Inc. v. Clear*, 900 A.2d 398, 403-04 (Pa. Super. 2006).

The Contract's minimum purchase requirement and requirement that Plaintiff sell only Sunoco gasoline and fuel products purchased from Defendant support an interpretation that good faith requires Defendant to make efforts to supply as much Sunoco fuel to Plaintiff as Plaintiff requests to purchase, as Defendant is required under the Contract to sell and deliver such Sunoco products to Plaintiff, Contract § 1(A), and failing to do so would prevent Plaintiff from performing. However, nothing in the Contract's language provides that Plaintiff has any exclusive territory to sell the Sunoco products that it buys from Defendant or references any geographical territory and there is no language in the Contract restricting Defendant's right to supply Sunoco products to others or concerning sales to others. Indeed, there is nothing in the Contract that even provides a basis for defining a distance within which Defendant could not brand or supply other gas stations. Moreover, reading such an additional term into the Contract would not even protect Plaintiff from nearby competitors becoming Sunoco stations, as the Contract is only between Plaintiff and Defendant. Because Sunoco is not a party, Sunoco would still be free to brand and supply nearby gas stations through other distributors. *See* 8/16/19 Sunoco to Defendant Email (indicating that if

Defendant did not brand and supply Competitor, another Sunoco distributor was interested in doing so).

Absent language in the Contract that shows a clear intent to give Plaintiff an exclusive territory or a clear intent to restrict Defendant's ability to brand or supply others, branding and supplying Competitor does not evade the spirit of the Contract or interfere with the performance of the Contract. Instead, reading the good faith requirement as prohibiting selling to or branding competitors would effectively add a new term to the Contract, rather than merely require Defendant to act in good faith in carrying out the Contract. *See West Run Student Housing Associates, LLC v. Huntington National Bank*, 712 F.3d 165, 170 (3d Cir. 2013) (plaintiff's lender's funding competitor's housing development across the street from plaintiff's housing development did not breach duty of good faith where plaintiff's contract with lender contained no language prohibiting loans to competitors). Because nothing in the language of the Contract shows that the parties intended to prohibit Defendant from branding other gas stations as Sunoco stations or from supplying Sunoco fuel products to other gas stations, such a term cannot be imposed under the guise of the Contract's good faith requirement and Defendant's branding and supplying of Competitor as a matter of law did not breach its contractual obligation to act in good faith. *John B. Conomos, Inc.*, 831 A.2d at 706-07; *Kaplan*, 671 A.2d at 720-22; *see also Glassmere Fuel Service, Inc.*, 900 A.2d at 403-04.

Plaintiff's claim that branding and supplying Competitor breached a statutory duty of good faith under Section 2306 of the UCC is likewise without merit. Section 2306 of the UCC provides:

> **(b) Obligation of parties in exclusive dealings**.--A lawful agreement by either the seller or the buyer for exclusive dealing in the kind of goods concerned imposes unless otherwise agreed an obligation by the seller to use best efforts to supply the goods and by the buyer to use best efforts to promote their sale.

13 Pa.C.S. § 2306(b) (emphasis in original). This statute provides only that Plaintiff's agreement to sell exclusively Sunoco fuel and purchase Sunoco fuel exclusively from Defendant imposes an obligation on Defendant to use best efforts to supply as much Sunoco fuel as Plaintiff wants to purchase. There is no claim that Defendant failed to satisfy that obligation.

Uniform Commercial Code Comment 5 to this statute does not change this. Comment 5 states:

> Subsection (2), on exclusive dealing, makes explicit the commercial rule embodied in this Act under which the parties to such contracts are held to have impliedly, even when not expressly, bound themselves to use reasonable diligence as well as good faith in their performance of the contract. **Under such contracts the exclusive agent is required, although no express commitment has been made, to use reasonable effort and due diligence in the expansion of the market or the promotion of the product, as the case may be. The principal is expected under such a contract to refrain from supplying any other dealer or agent within the exclusive territory.** An exclusive dealing agreement brings into play all of the good faith aspects of the output and requirement problems of subsection (1). It also raises questions of insecurity and right to adequate assurance under this Article.

13 Pa.C.S. § 2306, Uniform Commercial Code Comment 5 (emphasis added). The language that "[t]he principal is expected under such a contract to refrain from supplying any other dealer or agent within the exclusive territory" is inapplicable here, as it addresses contracts that provide for exclusive agency and make the buyer the exclusive retailer or distributor of the product supplied by the seller generally or in a particular territory. The Contract does not provide that Plaintiff is Defendant's exclusive agent for selling Sunoco fuel or provide any exclusive territory. Rather, the only exclusive relationship that it sets forth is that Plaintiff agrees to sells only Sunoco fuel products supplied by Defendant, not that Plaintiff will be the only retailer of those products. Contract § 1(A), (B).

Because the Contract does not set forth any exclusive territory or provide that Plaintiff is to be the only retailer of the fuel products that Defendant supplies, the only duty of good faith that Section 2306 imposes on Defendant is the duty to use best efforts to supply Sunoco fuel products to Plaintiff. 13 Pa.C.S. § 2306(b). Summary judgment was therefore also properly granted on Plaintiff's claim that Defendant breached its statutory duty of good faith, as Plaintiff never asserted any claim in this action that Defendant failed to supply sufficient Sunoco fuel to Plaintiff.

For the foregoing reasons, Defendant's branding of Competitor as a Sunoco station and its sale of Sunoco fuel to Competitor as a matter of law did not constitute a breach of Defendant's obligations of good faith under the

Contract or the UCC. We therefore affirm the trial court's order granting summary judgment in Defendant's favor.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 01/10/2023