J-A20040-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| MARK COAL STREET ASSOCIATES, L.P. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RAYMOND A. HASSEY AND JOSEPH A. HASSEY, AS TRUSTEES OF TRUST T/A CENTRAL DEVELOPMENT GROUP | : | No. 1631 MDA 2022 |
| | : | |
| Appellant | : | |

Appeal from the Judgment Entered November 17, 2022
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
201412881

BEFORE:   PANELLA, P.J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM PER CURIUM:             **FILED: OCTOBER 31, 2023**

Appellants, Raymond A. Hassey and Joseph A. Hassey, as Trustees of Trust T/A Central Development Group, appeal from the November 17, 2022, Entry of Judgment following a September 19, 2022, Order and Opinion awarding judgment in favor of Appellee, Mark Coal Street Associates, L.P. The issues raised involve contract interpretation of a lease. Following a thorough review, we affirm.

The relevant facts and procedural history as summarized by the trial court are as follows:

> The parties stipulated to the material facts and therefore are not at issue. The Defendants/Lessor and Plaintiff/Lessee entered into a ground lease on December 22, 2006, for two acres of

_____

[*] Former Justice specially assigned to the Superior Court.

property located at 410 Wilkes-Barre Township Boulevard and Coal Street, partially in the city of Wilkes-Barre and partially in the Township of Wilkes-Barre, Pennsylvania (hereinafter "Property"). (Joint Ex. 1). At the time the Lease was executed, there was an existing building on the Property that was occupied by a Super China Buffet. Joint Ex. 1; Joint Ex. 14; Hassey Dep. p. 11). After entering into the Lease, and pursuant to Paragraph 2 of the Lease, Plaintiff paid for the demolition of the existing building and also paid for the moving of power lines and placement of new infrastructure. (Joint Ex. 1; Joint Ex. 14, Hassey Dep. p. 11, 12). Plaintiff also paid for the construction of a new building, originally occupied by a Walgreen's pharmacy, which partially sits on the Property and property owned solely by Plaintiff. (Joint Ex. 5, 6; Joint Ex. 14, Hassey Dep. p. 8, 11, 12). The Walgreen's Pharmacy. Building has since been converted into an Advanced Auto Parts Store. Plaintiff also paid for and constructed a Popeye's restaurant on the Property. Joint Ex. 5, 10; Joint Ex. 14, Hassey Dep. p. 12).

The rent is defined in Paragraph 7 of the Lease as $15,000.00 monthly or $180,000.00 annually. Presently, Plaintiff has timely paid all rent due to Defendants. The Lease includes an Option to Purchase set forth in Paragraph 9. (Joint Ex: 1). By letter dated August 6, 2014, counsel for Plaintiff sent a letter to Raymond A. Hassey, Esquire (hereinafter "Attorney Hassey"), attempting to exercise the Option to Purchase set forth in Paragraph 9 of the Lease. (Joint Ex. 2). By letter dated August 13, 2014, Attorney Hassey sent correspondence to Plaintiff's counsel stating, *inter alia*, that the Option to Purchase was not ripe. (Joint Ex. 3). On September 2, 2014, Plaintiff's counsel sent another letter to Attorney Hassey setting forth, *inter alia*, its position with respect to the Option to Purchase set forth in the Lease. (Joint Ex. 4).

On November 19, 2014, Plaintiff filed its original Complaint, which included one count for Declaratory Judgment. On December 22, 2014, Defendants filed an Answer and New Matter to the original Complaint. On August 25, 2015, Attorney Hassey sent an email to Marvin Slomowitz (hereinafter "Mr. Slomowitz"), President of Mark Coal, with the subject line "Mark Coal Right of First Refusal." (Joint Ex. 15). The email included a one-page attachment from Select Realty Company (hereinafter "Select Realty"), dated August 24, 2015. (Joint Ex. 15). On August 26, 2015, Attorney Hassey wrote another email to Mr. Slomowitz with the subject line "Additional offer received on Mark Coal-Hassey Lease." (Joint Ex. 16). This email included a two-page attachment

dated August 25, 2015, from Kamin Investment Company (hereinafter "Kamin"). (Joint Ex. 16).

On September 10, 2015, Defendants filed a Motion for Preliminary Injunction seeking to stop the sale of the Subject Property, pending the results of the litigation. (Joint Ex. 9). On October 5, 2015, [the trial court] issued an Order denying the Motion for Preliminary Injunction (Joint Ex. 9). On October 13, 2015, Plaintiff filed a Praecipe for *Lis Pendens* with respect to the Property. (Joint Ex. 9). On July 7, 2017, Plaintiff filed an Amended Complaint, which included two claims: count 1 - Declaratory Relief and count 2 - Breach of Contract. On July 27, 2017, Defendants filed an Answer, New Matter and Counterclaims. The Counterclaims include two claims: count 1 - Declaratory Judgment and count 2 - Tortious Interference with Contracts and/or Prospective Contracts. The Parties stipulated to the authenticity, admissibility, and the fact that the Joint Exhibits would have been admitted into evidence at trial. However, the Parties did not agree to the relevance, materiality or weight, if any, to be accorded to the Joint Exhibits.

Tr. Ct. Op. at 1-3.

The parties agreed to have the matter decided on briefs instead of an in-person trial. The parties filed their briefs, and the trial court issued its decision on September 13, 2022, with an opinion on September 19, 2022, (hereinafter "Tr. Ct. Op."), finding in favor of Appellee. Appellants filed a post-trial motion on September 29, 2022, which was denied by the trial court on November 2, 2022. A praecipe to enter judgment was filed and judgment was entered by the prothonotary on November 17, 2022. Appellants filed a Statement of Errors Complained of on Appeal on January 6, 2022.[1] Appellants filed their brief on May 30, 2023, and a reply brief on July 12, 2023.

_____

[1] We note, as did the trial court, that Appellants' Statement of Errors Complained of on Appeal did not comport with Pa.R.A.P. 1925(b) which calls for a *concise* statement. Appellants filed a thirteen-page brief. "Our law makes
*(Footnote Continued Next Page)*

Appellants raised two issues for our review:

1. Did the lower court err by failing to interpret the lease agreement in accordance with its clear and unambiguous terms?

2. Did the lower court err by ruling against the weight of the evidence?

Appellants' Br. at 4.

Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as the verdict of a jury, and the findings will not be disturbed on appeal unless predicated upon errors of law or unsupported by competent evidence in the record. Furthermore, our standard of review demands that we consider the evidence in a light most favorable to the verdict winner.

*De Lage Landen Fin. Servs. v. Rozentsvit*, 939 A.2d 915, 918 (Pa.Super. 2007) (internal quotation marks and citations omitted). No relevant facts are in dispute. Because contract interpretation is a question of law, our review of the trial court's decision is *de novo* and our scope is plenary. *Bucks Orthopaedic Surgery Associates, P.C. v. Ruth*, 925 A.2d 868, 871

---

it clear that Pa.R.A.P. 1925(b) is not satisfied by simply filing any statement. Rather, the statement must be 'concise' and coherent as to permit the trial court to understand the specific issues being raised on appeal." *Tucker v. R.M. Tours*, 939 A.2d 343, 346 (Pa.Super. 2007). This Court found waiver in *Tucker* for breach of good faith and fair dealing when an appellant's Rule 1925(b) statement was sixteen pages long and when asked to clarify, the appellant provided an eight-page statement. *Id*. We do not find waiver here because Appellants raised issues that apprised the court of what they planned to argue, when the appellant in Tucker "effectively precluded appellate review" by including seventy-six paragraph statements that raised seventeen issues. We note our displeasure on failure to adhere to the Rules of Appellate Procedure.

(Pa.Super. 2007); *Highmark Inc. v. Hospital Service Association of Northeastern Pennsylvania,* 785 A.2d 93, 98 (Pa.Super. 2001).

For Appellants' first issue, we begin with considering several general principles of contract interpretation.

> The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties. The intent of the parties to a written agreement is to be regarded as being embodied in the writing itself. The whole instrument must be taken together in arriving at contractual intent. Courts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed. . . .

*Mitch v. XTO Energy, Inc.*, 212 A.3d 1135, 1138-39 (Pa.Super. 2019) (citation omitted). "In construing a contract, we must give effect to all of the provisions therein. An interpretation will not be given to one part of the contract which will annul another part of it." *Id.* at 1139 (citation omitted).

"[W]hen the language of a contract is clear and unequivocal, courts interpret its meaning by its content alone, within the four corners of the document," and "this Court need only examine the writing itself to give effect to the parties' understanding. [We] must construe the contract only as written and may not modify the plain meaning under the guise of interpretation." *Stephan v. Waldron Elec. Heating & Cooling LLC*, 100 A.3d 660, 665 (Pa.Super. 2014) (citation omitted).

> On the other hand, a contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. The "reasonably" qualifier is important: there is no ambiguity if one of the two proffered meanings is unreasonable. Furthermore, reviewing courts will not

- 5 -

distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity. When an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is patent, created by the language of the instrument, or latent, created by extrinsic or collateral circumstances. While unambiguous contracts are interpreted by the court as a matter of law, ambiguous writings are interpreted by the finder of fact.

*Family v. Pennenergy Res., LLC*, 276 A.3d 729, 736-37 (Pa.Super. 2022) (internal citations and quotation marks omitted).

Appellants raise four arguments under the issue of contract interpretation. Appellants' Br. at 20, 29, 37, 41. The first argument is that the trial court erred in finding that the option to purchase was ripe. Specifically, Appellants argue that the term of this lease was defined in the contact as twenty-nine years, eleven months, and twenty-nine days, and Appellee attempted to exercise the option to purchase after only eight years, which was premature. The language in the lease states,

> 9. **Option to Purchase**. Lessee shall have the option to purchase the Property pursuant to the terms of this Section 9 (the "**Option to Purchase**"). Should Lessee decide to exercise its Option to Purchase, it shall notify Lessor in writing no later than ten (10) days prior to the last day of the term of this Lease that Lessee intends to purchase the Property with settlement to occur at 10:00 am on the last day of the Lease (the "**Closing Date**") at a place to be mutually acceptable to both Lessor and Lessee.

Ex. 1, Lease Agreement, § 9 (bold emphasis in original).

The trial court held that the language regarding timing of the option to purchase is unambiguous and the exercise was ripe from the commencement of the lease up until ten days prior to the last day of the term, and we find no error in the application of contract law principles. Tr. Ct. Op. at 6. Appellants

argue that Appellee's positions are based on isolated and limited excerpts of the lease agreement, Appellants' Reply Br. at 1, and insist that a reading the "Option to Purchase" provision as a whole suggests a different result. Appellants' Br. at 22-23. While contract interpretation requires considering the contract as a whole, this language is unmistakably clear, and there is no language in the paragraphs that follow it that support Appellants' position.

Appellants argue that "a clear reading--and strict interpretation--of the terms of the lease agreement as a whole demonstrates that the option to purchase must be exercised within ten (10) days of the last day of the lease agreement," Appellants' Br. at 22, and, "[d]espite the Option to Purchase not being ripe until the end of the Term of the Lease Agreement--March 30, 2038--Plaintiff prematurely and without any basis in law or fact attempted to exercise the Option to Purchase[.]" Appellants' Br. at 12. However, the lease began on April 1, 2008. Ex. 1, Lease Agreement § 5. Adding the defined "term" of twenty-nine years, eleven months, and twenty-nine days results in the date of March 30, 2038. Subtracting the ten days from the last day of the "term" results in a date of March 20, 2038. Thus, Appellee had from April 1, 2008, to March 20, 2038, to exercise the option to purchase. Had Appellee exercised the option to purchase "within" ten days of the last day, it would have been too late. Had Appellee exercised the option to purchase "at the end of the Term of the Lease Agreement--March 30, 2038," it would have been too late.

Appellants submit a history of earlier drafts of the lease agreement as well as a report of their expert in order to prove that the intent of the parties

was that the option to purchase would become available upon a certain date but no earlier. Appellants' Br. at 24-29, 45-48. Appellants argue that the trial court failed to consider that evidence. However, parol evidence cannot be utilized to interpret unambiguous contract terms, **_Wert v. Manorcare of Carlisle Pa, LLC_**, 124 A.3d 1248, 1259 (Pa. 2015), and since there was no ambiguity regarding the ripeness of the option to purchase, the trial court did not commit an error of law by not considering evidence or language not in the final contract.

Appellants' second argument involving contract interpretation is that the lower court erred by effectively redefining the term "closing date" and that the trial court's interpretation of the option to purchase nullifies the closing date provision. Appellants' Br. at 23-24. Specifically, Appellants argue:

> the lower court erred by effectively imputing ambiguity on the term Closing Date, when it is clear that the already explicitly defined term has an unambiguous meaning in the Lease Agreement. If Plaintiff properly exercises the Option to Purchase, then the Closing Date under the Lease would be March 30, 2038, the last day of the Lease Term.

Appellants' Br. at 29-30. The trial court found ambiguity in deciding the closing date because of these provisions:

> Should Lessee decide to exercise its Option to Purchase, it shall notify Lessor in writing no later than ten (10) days prior to the last day of the term of this Lease that Lessee intends to purchase the Property with settlement to occur at 10:00 am on the last day of the Lease (the "**Closing Date**") at a place to be mutually acceptable to both Lessor and Lessee.
> . . .
> Should the parties come to settlement on the exercise of the option to purchase, then this lease shall terminate upon

- 8 -

consummation of the sale. In the event, Lessee fails to exercise its Option to Purchase, then the Term of this Lease shall automatically extend for an additional forty-five (45) years (the "**Extension Term**") on the same terms and conditions (including Rent) as applicable during the initial Term.

Ex. 1, Lease Agreement, § 9 (bold emphasis in original).

Given that the trial court had interpreted the lease to mean that the option to purchase was ripe, the court rationalized that if the closing date was set for the last day of the lease term as "term" is defined in the contract, then regardless of how early Appellee notified Appellants of its intent to exercise the option to purchase, Appellee would have to pay rent until March 30, 2038. Tr. Ct. Op. at 6-7.

The court considered parol evidence of deposition testimony and concluded that the most logical interpretation is that the lease terminates upon the closing date, but that the closing date should be soon after exercising the option to purchase, not on the last day of the "term" in approximately thirty years. Tr. Ct. Op. at 7-8. Thus, the court held, "the closing date under the Option to Purchase is within a reasonable amount of time after the option is executed." Tr. Ct. Op. at 8.

Appellants state, "the lower court erred when it relied upon one sole piece of parol evidence, which is a misconstrued excerpt of the deposition transcript of Mr. Hassey." Appellants' Br. at 42. We agree. The trial court erred in its application of the law by improperly considering parol evidence when the meaning of the provision is unambiguous.

The provision that the trial court found to cast ambiguity on the closing date states, "Should the parties come to settlement on the exercise of the option to purchase, then this lease shall terminate upon consummation of the sale." Thus, if the Lessee exercised its option to purchase instead of letting the stated term run out, then the lease ends on whatever day the closing occurs, which is a natural and probable outcome of the sale of a leased property. Read in conjunction with the first paragraph of the Option to Purchase section that "the settlement will occur at 10:00 am on the last day of the Lease (the "**Closing Date**")," it is clear that the closing date is whatever date on which the lease terminates. The parties are to meet at 10:00 am on the day the lease terminates pursuant to the parties' agreement to exercise the option to purchase. Notably, the word "Term" does not appear in either sentence discussing the "sale" or the "closing date" as both provisions discuss the end of "Lease," not the end of the "term."

Appellants argue,

> The contract expressly states that closing will occur, if the Option to Purchase is exercised, on the last day of the *lease*, which occurs at 10:00 am *on the 29th day, in the 11th month of the 29th year*.

Appellants' Statement of Errors Complained of on Appeal at 9 (italics emphasis added). Further,

> If Plaintiff properly exercises the Option to Purchase, then the Closing Date under the Lease would be March 30, 2038, the last day of the Lease *Term*.

Appellants' Br. at 29-30 (italics emphasis added). And,

> The language clarifies that on the last day of the *29 year, 11 month, and 29 day* lease *term*, if lessor exercises the option to purchase, the lease would end and the property would close on that "Closing Date."

Appellants' Reply Br. at 8 (italics emphasis added). Appellants seek to insert the word "term" so that it appears that the parties agreed in the lease that closing would be at the end of the *term* as it is defined in the lease at nearly thirty years in the future. "It is not the province of the court to alter a contract by construction or to make a new contract for the parties; its duty is confined to the interpretation of the one which they have made for themselves, without regard to its wisdom or folly." **Amoco Oil Co. v. Snyder**, 478 A.2d 795, 798 (Pa. 1984). The last day of the *lease* is not 29 years 11 months and 29 days in the future, that is the last day of the "term." The last day of the lease is whatever date the lease terminates pursuant to the parties exercising the option to purchase.

We conclude that the trial court erred in its application of the law by improperly considering parol evidence when the meaning of the provision about the termination of the lease is unambiguous. However, "[t]o constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party. . . . A party suffers prejudice when the trial court's error could have affected the verdict." **Schuenemann v. Dreemz, LLC**, 34 A.3d 94, 101 (Pa.Super. 2011) (quotation marks and citations omitted).

There is no ambiguity if one of the two proffered interpretations is unreasonable, and allowing a party to exercise an option to purchase but not

allowing that party to close on the property for nearly thirty years is an unreasonable result, and the trial court should not have considered it a "reasonable" interpretation that required the utilization of parol evidence before being disregarded. Although the court found ambiguity when there was none and improperly considered parol evidence, the trial court's final interpretation of this provision is correct. While the events to occur on the "Closing Date" are unambiguously defined in the contract, no date was expressly set as the "Closing Date," and thus the trial court's determination that closing is to occur within a reasonable time is not "redefining" anything in the lease and will not be disturbed.

Appellants' third and fourth arguments of contract interpretation are that the trial court erred in its interpretation of the word "Property," and in turn ascribed an erroneous meaning to the "market value" of the leased property. Appellants' Br. at 37. Specifically, Appellants argue that the improvements that Appellee added to the property since the commencement of the lease are included in the term "Property," and thus in determining the market value that Appellee must pay Appellants for said property, the value of the added improvements must be included in the calculation according to basic principles of property law. Appellants' Br. at 37-38; Appellants' Reply Br. at 9-10.

The provision at issue states that once the Lessee exercises the option to purchase:

As consideration for such purchase, the parties hereto agree that Lessee shall pay to Lessor a sum (the "**Option Price**") equal to the greater of: (a) *the fair market value of the Property at the time the option is exercised* as determined by a certified licensed Pennsylvania real estate appraiser satisfactory to both Lessor and Lessee, or (b) Two Million Five Hundred Thousand and No/100 Dollars ($2,500,000.00).

Ex. 1, Lease Agreement § 9 (bold emphasis in original, italics emphasis added). The trial court held that the option price does not include the value of improvements paid for Appellee on the property because the lease defines the property at issue as "improved real property" that Appellee took "as is" and any "improvements" to it were at Appellee's expense and do not need to be repurchased by Appellee. Tr. Ct. Op. at 8-9. We agree.

The term "Property" is defined in the lease:

**WHEREAS,** Lessor is the owner of certain improved real property located at 410 Wilkes-Barre Township Boulevard, consisting of approximately two (2) acres, with frontage and access on Wilkes-Barre Township Boulevard and Coal Street, partially in the City of Wilkes-Barre and partially in the Township of Wilkes-Barre, Pennsylvania (the "**Property**").

Ex. 1, Lease Agreement ¶ 2 (bold emphasis in original). Thus, the "Property" that Appellants own and that Appellee took under the lease in 2006 was "improved real property," "as is," and the option price is the fair market value of the same. The trial court was correct to conclude that the fair market value of the Property does not include any structure or facility, called "Improvements," constructed by Appellee at its own expense. The term "Improvements" (with a capital "I") is defined in the lease:

2. **Property taken "AS-IS".** Lessee agrees to take tenancy of the Property in "as-is" condition, with existing improvements, and

subject to such easements and hereditaments, as exist on site. Lessee, shall, at its own expense undertake to demolish the existing building(s) and where necessary, replace, reroute and install such infrastructure, utility lines, drain lines and sewer lines and mains, points of ingress and egress, and Lessee shall at its own expense, construct such new facilities and improvements (**"Improvements"**).

Ex. 1, Lease Agreement § 2 (bold emphasis in original). The plain language of the lease does not include the "Improvements" undertaken by Appellee in the definition of the "Property," and the option price is the fair market value of the "Property"—not "Property with Improvements."

We are unpersuaded by Appellants' argument that the trial court considered parol evidence in arriving at these conclusions. Appellants argue that "[t]he lower court did not make a finding of ambiguity regarding the term 'Property,' yet it did reach to outside extrinsic evidence and considered parol evidence in support of its finding that improvements shall not be included in the valuation of Property. (See Appendix "A" at p. 8)." Appellants' Br. at 33. And, "[t]he lower court's opinion clearly references the anticipation of the parties in negotiations, which is outside the four corners of the documents. (See Appendix "A" at p. 8)." Appellants' Reply Br. at 10. A reading of the trial court's opinion reveals that the trial court did consider that "the parties anticipated Plaintiff constructing commercial buildings on the Property," Tr. Ct. Op. at 8, and "[t]he parties anticipated Plaintiff purchasing the Property." Tr. Ct. Op. at 9.

However, this was not a reliance on the anticipation of the parties from their *negotiations*, as Appellants assert. The court discussed what the parties

"anticipated" pursuant to the lease agreement itself. Ex. 1, Lease Agreement ¶ 2 ("Lessee shall at its own expense, construct such new facilities and improvements"); Ex. 1, Lease Agreement § 9 ("Lessee shall have the option to purchase the Property"). Thus, the trial court correctly found no ambiguity existed and considered no extrinsic evidence in holding that the term "Property" as defined in the lease does not include any of Appellee's constructions or improvements and that they should not be included in the fair market value.

Moreover, this outcome does not diminish the value of the property or ignore the value of the improvements on the property as Appellants assert. Appellants' Reply Br. at 11. This would be true only if the cost was subtracted from a third party's purchase price, not when subtracted from the Appellee's price when Appellee built it. ***Amoco Oil Co. v. Snyder***, 448 A.2d 1139, 1142 (Pa.Super. 1982) ("it would be unfair to require the optionee to meet a third party's offer which would naturally reflect the improvements on the premises made by the optionee himself."). The contract expressly puts the responsibility for the cost of demolition of the structure already on the leased land on Appellee, and Appellee paid for the additional improvements. We will not require Appellee to pay for the same thing again.

Next, Appellants challenge the trial court's award to Appellee of rent paid since exercising the option to purchase. Appellants' Br. at 50. This issue was not included in Appellants' statement of questions involved. Appellants' Br. at 4. We note that issues not presented in the statement of questions

involved portion of an appellant's brief are generally deemed waived. Pa.R.A.P. 2116(a) ("The statement of the questions involved must state concisely the issues to be resolved, expressed in the terms and circumstances of the case but without unnecessary detail."); **Werner v. Werner**, 149 A.3d 338, 341 (Pa.Super. 2016) (internal citation omitted) ("Issues not presented in the statement of questions involved are generally deemed waived"). "However, such a defect may be overlooked where an appellant's brief suggests the specific issue to be reviewed and appellant's failure does not impede our ability to address the merits of the issue." **Id.** at 341 (internal citation and brackets omitted). We are able to discern the issues from the argument section of Appellants' brief and, therefore, we do not find waiver on this basis.

Turning to the merits, we find that the trial court properly awarded Appellee rent paid exercising the option. The trial court applied **True R.R. Assocs., L.P. v. Ames True Temper, Inc.**, 152 A.3d 324 (Pa.Super. 2016):

> Where one party to a contract without any legal justification, breaches the contract, the other party is entitled to recover, unless the contract provided otherwise, whatever damages he suffered, provided (1) they were such as would naturally and ordinarily result from the breach, or (2) they were reasonably foreseeable and within the contemplation of the parties at the time they made the contract, and (3) they can be proved with reasonable certainty.

**Id.** at 342. The trial court held that Appellants had no legal justification for refusing to accept Appellee's August 6, 2014 letter exercising its option to purchase the property, that failing to accept the terms of the option to

purchase was a breach, that the rent paid by Appellee was a natural and foreseeable loss suffered from the breach, and that the damages were proven with reasonable certainty because the monthly rent was set forth in the lease. Tr. Ct. Op. at 10. We discern no error of law.

Appellants argue that there was legal justification in refusing to exercise the option to purchase because Appellants were "operating on what it believed to be the clear language and intent of the lease --- namely, that Plaintiff was not entitled to exercise its option to purchase and close on the purchase until March 30, 2038." Appellants' Br. at 53. However, as pointed out above, the lease began on April 1, 2008. Even if the closing date had been expressly set in the lease as the end of the "Term," which it was not, adding the defined "term" of twenty-nine years, eleven months, and twenty-nine days results in the date of March 30, 2038. Subtracting the ten days from the last day of the "term" results in a date of March 20, 2038. Thus, it was not a reasonable reading of the lease, and thus not a legal justification for breach, for Appellants to argue that they thought Appellee could only validly exercise its option to purchase on March 30, 2038.

We also find that ***True R.R.*** is analogous to this case. Appellants argue that the case is distinguishable because Appellee's request is for an award of money damages, yet the ***True R.R.*** trial court only entered a "credit against the purchase price for the rent it paid." Thus, Appellants argue, ***True R.R.*** only provides for a credit at closing in the amount of rent that it paid if the purchasing party demonstrates that it was entitled to exercise its option to

purchase and that it legally complied with the terms of the option. Appellants' Br. at 57-58 n.3. Not only is this distinguishment futile, Appellee's amended complaint *does* seek to "award Plaintiff damages, *or a credit at the closing on the Property*, . . . plus all monthly rental payments[.]" Amend. Comp., at 8 (emphasis added). The trial court's order awarded Plaintiff, "damages, *or a set off from the sales price of the Property*, . . . plus any additional monthly rental payments[.]" Tr. Ct. Order 9/13/22, ¶ 2 (emphasis added). Thus, we conclude that the trial court properly applied the law in holding that Appellee is entitled to a credit against the sales price for rent paid beginning January 2015 until closing on the property.

Appellants' second issue is a challenge to the weight of the evidence on Appellants' tortious interference counterclaim. Our standard of review for a challenge to the weight of the evidence is as follows:

> When reviewing a verdict in a non-jury trial, this Court will respect a trial court's findings with regard to the credibility and weight of the evidence unless the appellant can show that the trial court's determination was manifestly erroneous, arbitrary and capricious, or flagrantly contrary to the evidence. The test is not whether this Court would have reached the same result on the evidence presented, but rather, after due consideration of the evidence the trial court found credible, whether the trial court could have reasonably reached its conclusion.

*El-Gharbaoui v. Ajayi*, 260 A.3d 944, 965-66 (Pa.Super. 2021) (internal citations and quotation marks omitted). "When the trial court sits as fact finder, the weight to be assigned the testimony of the witnesses is within its exclusive province, as are credibility determinations, and the court is free to

choose to believe all, part, or none of the evidence presented." ***Stokes v. Gary Barbera Enterprises, Inc.***, 783 A.2d 296, 297 (Pa.Super. 2001). "This Court is not free to usurp the trial court's duty as the finder of fact." ***Isralsky v. Isralsky***, 824 A.2d 1178, 1190 (Pa.Super. 2003).

Specifically, Appellants argue that the evidence submitted shows that Appellants had accepted an offer to purchase the property and that Appellee's seeking of injunctive relief and filing of a *lis pendens* lien without legal justification establishes intentional interference with Appellants' potential contract with a third-party, Select Realty. We find that this argument is without merit. We note that while the court below was free to ignore any purported evidence and make any credibility determinations, any evidence about alleged third party offers are irrelevant because Appellee had already exercised its option to purchase on August 6, 2014, which Appellants improperly refused. The trial court noted that there is no provision in the lease that terminates the option to purchase upon the occurrence of an event, Tr. Ct. Op. at 12, and the option to purchase was ripe since commencement of the lease on April 1, 2008, so Appellants were in breach by not closing within a reasonable time and by continuing to accept rent under the lease. Thus, any discussion about the evidence of the two third party offers received by Appellants or the effect of this litigation on those offers are futile.

Accordingly, the judgment is affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>10/31/2023</u>